## 65739. WRIGHT v. THE STATE.

McMurray, Presiding Judge.

Defendant was indicted with two others for the offense of armed robbery, the same being in four counts with reference to the removal of property from four persons by the use of an offensive weapon. He was separately indicted in an additional indictment in two counts for the offense of aggravated assault upon a peace officer, that is, separate counts involving two police officers. He was tried, convicted and appeals. *Held:*

1. The state's evidence disclosed that while an armed robbery by three males was in progress in a particular steak house restaurant, two police officers, who were not aware of the robbery, were on routine patrol in the near vicinity of this restaurant. As the officers were stopped for a traffic light one of the officers observed an individual, later identified as the defendant Wright, emerge from a door of the restaurant with a brown box in his hand. The officers drove over near the defendant and attempted to talk to him. However, the defendant made no response and as one of the officers walked up to him, defendant "shoved" the box at the officer and the box fell to the ground. The officers started chasing the defendant on foot and defendant began shooting at them with the officers returning the gunfire. Defendant ran into a cemetery, stopped and threw down his gun, whereupon he was struck by one of the officers and apprehended. Upon examination of the box by another police officer, who arrived later, it was found to contain two moneybags, some paper money, coins and four packs of sugar.

The defendant admitted being present, contending he had "caught" a ride with three males whom he had accompanied to the vicinity of the steak house restaurant, he not knowing they intended to rob it. He contends that he did not remove the box from the restaurant but when one of the three men put the box in the automobile where he was sleeping it awakened him. Defendant testified that after this man left "I took the box and opened it up and I

saw two money bags in the box, a pistol and change and money . . . so right then I decided to take the box." He also testified that as he was running from the police officers, the pistol he had in his hand discharged accidentally.

There was also testimony by a defense witness that the defendant Wright was not one of three males who approached this witness on the same night after the robbery occurred. These individuals said they were stranded and needed a ride to a specific city some 40 miles distant. This witness testified he was approached as he was preparing to make a telephone call out near an exit of the interstate highway and that he did transport the three males to the specified city. Another defense witness, who was a customer at the restaurant before the robbery took place, testified that as he was entering the restaurant, and also as he was leaving, he saw defendant Wright sitting in the back of an automobile and that he never saw the defendant inside the restaurant although he saw three other males come into the restaurant and be seated.

Defendant Wright was taken to a hospital and confined to an emergency room where he was handcuffed and secured to a railing of the bed. In this position employees and customers of the restaurant were brought to the hospital to identify him. Of the employees and customers who viewed the defendant at the hospital only one of the customers was able to identify the defendant as being one of the three participants in the robbery. This male customer testified that as he and his female companion were eating their food one of the participants, whom he identified as defendant Wright, came up behind him (customer) "and put his hand on my shoulder and told us to go to the other part of the restaurant . . . I told him I was busy eating, and he told us that the second time . . . I told him we didn't have time, we were busy eating."This witness testified that he didn't look at this individual the first two times but when "[h]e told us the third time they were going to rob it, rob the place, and for us to get up . . . I turned around and looked at him," at his face. The witness further testified that "when I looked up and saw him, he pulled his pistol out from under his coat." All the customers and employees were then shut up in the restaurant cooler.

The defendant's motion to suppress the in-court identification because the hospital showup of the defendant was unnecessarily suggestive and conducive to an irreparable misidentification was denied by the trial court as to the male customer but sustained as to the identification by his female companion. The primary evil to be avoided is the substantial likelihood of irreparable misidentification. See Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387). Defendant contends that the hospital showup was unnecessary as he

was not in danger of dying as was the case in Stovall v. Denno, 388 U. S. 293 (87 SC 1967, 18 LE2d 1199), and the showup is very similar to that of *Towns v. State,* 136 Ga. App. 467, 469 (1) (221 SE2d 631), in that same was overly suggestive as there was clothing in the hospital room which aided the identification as was the case in *Towns v. State,* 136 Ga. App. 467, supra. However, in the case sub judice, there was a short length of time between the crime and the confrontation by the witnesses at the hospital, a little over an hour after the robbery had commenced, at which time positive identification of the defendant was made by only one witness (a male customer). Certainly preindictment confrontations should be scrutinized to determine whether the confrontations were unnecessarily suggestive and conducive to irreparable misidentification. But an in-court identification should be admitted when a prior one-on-one showup was reasonable and fairly conducted at or near the time of the offense. See Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 32 LE2d 411). Under the facts and circumstances here we do not find a substantial likelihood of misidentification. The facts to be considered in evaluating the likelihood of misidentification set forth in Neil v. Biggers, 409 U. S. 188, 200 (93 SC 375, 34 LE2d 401) were all considered by the trial court. The case sub judice is dissimilar to *Towns v. State,* 136 Ga. App. 467, supra. See *Yancey v. State,* 232 Ga. 167, 169 (205 SE2d 282); *Arnold v. State,* 155 Ga. App. 782, 783 (272 SE2d 751); *Daniel v. State,* 150 Ga. App. 798, 800 (258 SE2d 604). The trial court did not abuse its discretion in denying the motion to suppress in this instance.

2. The state's evidence with reference to the activity regarding this defendant, plus his own admissions that he had arrived at the steak house with the other robbers presented sufficient evidence to warrant a conviction of armed robbery. We find no merit in the contention that the state failed to present sufficient evidence. The trial court did not err in denying the defendant's motion for directed verdict which was based on the ground that the state failed to prove every element of the crimes charged. After a review by this court of the trial transcript and record, we are convinced and so hold, that a rational trier of fact (the jury in this case) could reasonably have found the defendant guilty beyond a reasonable doubt of the offenses charged. See *Mullis v. State,* 248 Ga. 338 (1) (282 SE2d 334); *Anderson v. State,* 248 Ga. 682, 683 (285 SE2d 533); *Whatley v. State,* 151 Ga. App. 174, 175 (259 SE2d 175), and cases cited therein. Considering all the direct and circumstantial evidence in this case, we find no merit in these enumerations of error.

While during this robbery money belonging to the same individual was taken from two different individuals, the items were

taken out of the physical presence of the separate victims, the same being under the victim's control and responsibility. The elements of the crime that he took the property of another from the person or immediate presence of another by the use of an offensive weapon were properly met. See OCGA § 16-8-41 (formerly Code Ann. § 26-1902 (Ga. L. 1968, pp. 1249, 1298; 1969, p. 810; 1976, p. 1359; 1981, p. 1266)); *Mitchell v. State,* 157 Ga. App. 146, 147 (3) (276 SE2d 658); *Welch v. State,* 235 Ga. 243, 245 (219 SE2d 151).

3. The remaining enumeration of error contends that the trial court erred in allowing a police officer to testify over objection that this witness' name had not been timely served on counsel for defendant. In *Davis v. State,* 135 Ga. App. 203, 206-207 (3) (217 SE2d 343), this court has held that the statute authorized the sanction of exclusion of a witness' testimony but same is not mandatory where the trial court in its discretion determines that the defendant can be protected by some other form of relief. Such was the case in *Butler v. State,* 139 Ga. App. 92, 93 (227 SE2d 889). In the case sub judice, counsel for defendant was given an opportunity and did interview the unlisted witness before this witness was allowed to testify. We find no merit in this complaint.

*Judgment affirmed. Birdsong, J., concurs. Shulman, C. J., concurs in the judgment only.*

DECIDED APRIL 15, 1983.

*David E. Perry,* for appellant.
*Thomas H. Pittman, District Attorney, Robert C. Wilmot, Assistant District Attorney,* for appellee.