## 72111. BONE v. THE STATE.
(345 SE2d 46)

BIRDSONG, Presiding Judge.

Charlotte Annette Bone was convicted of using a fraudulent writing in a matter within the jurisdiction of the state government, i.e., furnishing for remuneration a fictitious real estate license to an unqualified licensee. She was sentenced on three counts to run consecutively, on Count 1 to serve five years, and five years on probation on Counts 2 and 3. She brings this appeal enumerating nine alleged trial court errors. *Held*:

The facts giving rise to this appeal reflect that a land development corporation was selling lots for improvement at Lake Sinclair.

The development company hired several agents to sell these lots. When first hired, these agents were not required to be licensed real estate agents. When the company became aware that the state required licensed real estate agents to sell the property being developed, the company retained Ms. Bone to conduct a pretest real estate school at the company's premises in Hancock County. Ms. Bone is licensed by the state as a real estate broker and is qualified to conduct one of these pretest schools. Numerous students took the course and apparently most passed Ms. Bone's course of preparation and the state real estate examination. However at least three of her students were unsuccessful in passing the state administered real estate examination. These employees were aware that they had to have a license in order to retain their employment with the development company. Each of the three applicants (represented as co-indictees with Ms. Bone) approached the broker who was the principal agent representing the development company, one Lineberger, also a co-indictee. The employees made inquiry of Lineberger if there was any way they could get a license. Lineberger informed them that he would make inquiry of Ms. Bone to see if she could be of any help. Though no formal agreement between Lineberger and Ms. Bone appears of record, it apparently was agreed that for a payment of sums ranging from $700 to $1,200 paid to Lineberger (and another in one case) and by him to Ms. Bone, the employees could obtain a real estate license. Each paid the required sum and in due course a license was forwarded ostensibly from Ms. Bone to Lineberger as broker. The custom in the real estate business is that all real estate salesmen must be associated with a broker in order to sell real estate even though licensed to do so. Lineberger being the broker for the development company, all agents selling real estate for the company worked through Lineberger and their licenses were displayed on the wall of his office in Hancock County. Subsequently Lineberger left the Hancock County development and moved his office to Milledgeville in Baldwin County. He continued to display in his office in Baldwin County the several licenses of the real estate salesmen who worked with Lineberger as their broker.

One of the co-indictees after paying his money for his license to Lineberger did not receive it promptly. He made inquiry of the Georgia Real Estate Commission and repeatedly was told that the commission files did not show him as having a license and as not being a real estate agent. After receiving his license and upon inquiry to Ms. Bone, he was told that his license was authentic and had come from the Real Estate Commission because she had a "friend" in the commission office. An investigation of Lineberger ensued and in his office, displayed on the wall as evidence of valid real estate licenses, were three licenses all of which were fictitious in that none of the persons

represented in the licenses was recorded as having successfully passed the real estate agent's qualifying test. While all three had successfully completed Ms. Bone's pretest school with a passing grade, all three had taken the state test and failed to achieve a passing grade.

1. In her first enumeration of error, Ms. Bone argues that the trial court erred in allowing several witnesses to testify whose names had not been furnished in a timely fashion to the defendant pursuant to her demand for a list of witnesses. The facts show that pursuant to the request, the state furnished a list of five names. Several days before trial, an additional list of about ten more names was furnished. Of those ten, only three of the co-indictees were called, with their permission, as were two other witnesses. To the effect that names in the indictment constitute notice, see *Redmond v. State*, 252 Ga. 142 (2) (312 SE2d 315). The state showed that the names of all additional witnesses were furnished to the defense investigator several days before trial. When this was communicated to the defense counsel, he urged his investigator to interrogate as many as possible. The transcript does not show how many, if any, the investigator was able to interrogate before the trial started. Additionally, it was shown that two of the co-indictees upon the advice of their individual counsel declined to talk to the investigator or defense counsel when attempts were made to interrogate them. The trial court inquired fully into the state's efforts to comply with the demand for the list of witnesses. In view of the fact the defense announced ready when the case was called without registering any objection to the calling of additional witnesses, the court denied counsel's motion for continuance but granted the defense full opportunity to interrogate each witness not previously interrogated prior to the witness being called by the state. Counsel for Ms. Bone, after registering his motion to disqualify the additional state witnesses, acquiesced in the procedure without renewing his motion.

First, we observe that appellant's counsel apparently was aware prior to the start of the trial that the state intended to call several witnesses whose names had been filed with the appellant only a few days before trial was to start. Yet when the case was called, appellant's counsel announced as ready. Then as the witnesses were called, objection was made that the names of the witnesses had not been timely filed. Under such circumstances, it has been held by this court that any error in the delayed notification of witnesses to be called was waived by the announcement that the defense was ready. *Hardin v. State*, 142 Ga. App. 795, 796 (237 SE2d 202); *Davis v. State*, 135 Ga. App. 203 (217 SE2d 343). Moreover in this case, Ms. Bone's counsel admitted he had a weekend to interview the witnesses but simply did not know if his investigator had accomplished such interrogations. Lastly, we observe the trial court gave the defense opportunity to in-

terview each of these witnesses prior to the witness testifying. This procedure was acquiesced in and followed by counsel. The sanction of the statute excluding the testimony of a witness whose identity has not been disclosed as required by the statute is not a mandatory exclusion and the protection contemplated by the statute can be accomplished where the trial court in its discretion determines the defendant can be protected by some other form of relief. *Wright v. State*, 166 Ga. App. 295, 298 (3) (304 SE2d 105). Such protection can be afforded, as it was in this case, by giving the defendant an opportunity to interview the witnesses before allowing the witness to testify. *Butler v. State*, 139 Ga. App. 92, 93 (227 SE2d 889). There is no merit in this enumeration of error.

2. In her second enumeration of error, Ms. Bone argues the state did not prove venue in Baldwin County. This argument proceeds from the premise that the licenses in question were issued while the three unqualified agents were selling real estate in Hancock County and the licenses were "used" only in that county. Thus when Lineberger moved to Baldwin County and displayed the licenses on his wall in his office in Baldwin County, these licenses were not "used" in Baldwin County. It is not disputed that the state proved that Lineberger's office was located in Baldwin County and the three licenses were displayed, as if authentic, in his office. Thus the only question is whether a license is "used" as a license when it is displayed in the office of a broker as an authentic license or whether it was "used" only when displayed and the agent so licensed actually sells real estate.

We will not place the restricted meaning on the word "used" suggested by Ms. Bone. The gravamen of the offense charged was not that the bogus agents sold real estate but that an allegedly authentic real estate license, which lawfully could only be issued by the Real Estate Commission following the meeting of the requisite qualifications by the licensee, was surreptitiously issued by one not authorized and thereafter placed on public display as allegedly authentic. While certainly an unlawful act, if a license were unlawfully fabricated and hidden or destroyed without publication, it hardly can be said that the authority of the Real Estate Commission has been challenged or damaged nor does the mere sale of real estate necessarily involve the use of a fictitious license. We conclude therefore that the crime of using a fraudulent document within the jurisdiction of the state was committed when the fictitious documents were displayed as authentic in the office of a broker. Appropriate proof established that display occurred in Baldwin County. We find no merit in this enumeration.

3. In enumeration of error 3, Ms. Bone argues with much facial merit that the indictment charged her with "using" a fictitious document (as a statutory principal) whereas the trial court charged the

jury and thus allowed it to return a verdict if it found she "made" or "used" such a fictitious document. We would agree that this enumeration raises an inherently prejudicial charge except for two reasons contraindicative thereto. In the first place, the state offered no proof that the documents were prepared by Ms. Bone personally either by way of expert testimony that the documents came from her office or by use of documents or typewriters that could be located only in her office. Circumstantially it was shown that one of the licenses had been in her office at one time and that as to all three of the licenses, she was asked if she could obtain licenses, she accepted a fee and licenses shortly thereafter came through the mail to the broker Lineberger. While this evidence may circumstantially show that Ms. Bone "made" the licenses, it more nearly establishes the state's contention that she was a principal to the ultimate "use" of the documents when they were mailed to the broker and displayed on his wall as "authentic" licenses. Thus while there could have been a potential for confusion with the jury, the evidence most consistently established the fact and satisfied the responsibility of the jury to find a "use." We are satisfied a reasonable jury would not have been misled by the insertion of the word "made" in the charge of the court. See *Jackson v. Kight & Sons*, 159 Ga. 584 (3) (126 SE 379); *Hogan v. City-County Hosp.*, 138 Ga. App. 906, 909 (227 SE2d 796).

Secondly, and more importantly, prior to its charge, the trial court conducted a precharge conference. Three times the court stated verbatim that the charge would be in the language of the statute and would include the words "made and used." Counsel for Ms. Bone then independently agreed that the charge was correct and repeated himself, as a proper use, the words "made and used" while suggesting the removal of other words which he felt were inappropriate. Even assuming arguendo the charge may have introduced an extraneous basis for conviction, the error was for all practical purposes not only waived but also induced by the defense. It is never permissible to base appellate error on induced error. *Drake v. State*, 142 Ga. App. 14, 16 (234 SE2d 825). Moreover at the conclusion of the charge of the court, counsel were asked if they had any objections. Counsel for Ms. Bone stated unequivocally he had none and even complimented the court on a job well done. This too precludes any appellate court enumerations on the charge. *White v. State*, 243 Ga. 250 (253 SE2d 694). This enumeration lacks merit.

4. Ms. Bone contends as error a passing reference by one witness that the Real Estate Commission had evidence of three additional fictitious real estate licenses probably attributable to Ms. Bone's activities. No further reference was made to these licenses by any witness and no objection was voiced at the time the evidence was admitted or at any other time before the trial court or jury. Ms. Bone now con-

tends the admission of these acts of uncharged misconduct violates the rules of procedure before superior courts in that she was not informed that the state was determined to use such evidence.

We will give no consideration to the merits of this enumeration. One cannot ignore what may be harmful error while hoping for a favorable result and then raise error when expectations prove false. *Joyner v. State*, 208 Ga. 435, 438 (67 SE2d 221); *Gibbons v. State*, 136 Ga. App. 609, 610 (222 SE2d 55). Appellate courts exist for correction of trial error, where proper objection is taken. *Velkey v. Grimes*, 214 Ga. 420, 421 (105 SE2d 224). Where enumerated errors on appeal attempt to raise for the first time questions not raised in the trial court, nothing is presented for appellate decision. *Cauley v. State*, 137 Ga. App. 814, 815 (224 SE2d 794).

5. In enumeration of error 5, Ms. Bone contends there was no corroboration of the testimony of the several accomplices and a conviction may not be sustained upon the uncorroborated testimony of an accomplice.

We are not persuaded by this argument. The evidence showed that hanging on the wall in Lineberger's office were three fictitious real estate licenses. This was not evidence of a circumstantial nature nor evidence resting upon the testimony or veracity of an accomplice but real, demonstrative evidence. There was independent evidence that the named licensees had all attended a pretest school operated by Ms. Bone and that each had been certified as qualified as her graduates to take the real estate agent's state-administered exam. Three of the accomplices testified that they had sought a license from Lineberger and became aware that for the payment of a fee, a license could be obtained from Ms. Bone. After payment of that fee, a license was indeed obtained.

In the case of accomplice testimony, although the corroboration must be independent evidence which tends to connect the accused with the crime (*West v. State*, 232 Ga. 861 (209 SE2d 195)), slight evidence is still the test. *Alderman v. State*, 241 Ga. 496, 510 (246 SE2d 642); *Birt v. State*, 236 Ga. 815, 826 (225 SE2d 248). Moreover where two or more accomplices testify, the testimony of one may be corroborated by another. Considering the circumstantial evidence of Ms. Bone's connection to the real estate commission, her sponsorship of these co-indictees, the physical evidence of the forged documents, and her personal connection to at least one of the documents found hanging on Lineberger's wall, we are satisfied there was more than slight independent evidence to show her connection at least by circumstantial evidence. *Williams v. State*, 222 Ga. 208, 220 (149 SE2d 449). When that evidence is taken together with the further testimony of the co-indictees, we are satisfied there was ample evidence to withstand a motion for a directed verdict of acquittal. *Davis v. State*, 234

Ga. 730, 732 (218 SE2d 20). There is no merit in this enumeration.

6. Ms. Bone urges error in the failure of the trial court sua sponte to charge upon the necessity of the corroboration of accomplice testimony. We first point out that trial defense counsel for all this record shows made no specific request for a charge on the corroboration of accomplice testimony and made no objection to the omission of such a charge. In its charge, the court informed the jury fully on the principles of credibility of witnesses, impeachment of witnesses, corroboration of a witness after impeachment, and the law of parties to a crime.

As we held in Division 5 of this opinion, the state did not rely wholly on the testimony of accomplices to justify the conviction of Ms. Bone. Contrary to appellant's argument, it has been held by this court that a trial court does not err in failing to charge on the weight to be afforded testimony of an accomplice nor the necessity for corroboration, where the appellant did not request such a charge, and did not except to failure to give such a charge sua sponte, and where the guilt of the accused was not based solely upon the accomplices' testimony. *Maxwell v. State*, 170 Ga. App. 831 (318 SE2d 650). This is reenforced by the affirmative charge given by the court on the weight and credibility to be given the testimony of any witness and the law of principles. See *Been v. State*, 163 Ga. App. 581 (295 SE2d 541). This enumeration lacks merit.

7. The seventh enumeration relates to the failure to conduct an in-camera review by the trial court of a tape recording of a conversation assertedly occurring between the appellant Ms. Bone and one Blumenthal. Ms. Bone has not made the court aware of what she contends the tape contains, where or what discrepancies may be present nor that production of the tape may cause a different trial result. An examination of the transcript shows that the trial court over a several day trial apparently intended to listen to the tape in-camera but did not do so. Again at the hearing on the motion for new trial, the court indicated it would do so. We are not aware from the record or transcript whether that has been done. Nevertheless, a *Brady* motion does not require a complete exposure of the prosecutor's file nor require the state to produce any and all tangible objects. *Shavers v. State*, 244 Ga. 491, 493 (260 SE2d 883). In this case, the prosecutor has averred that the tape does not contain any exculpatory material and the trial court has promised that it would conduct the in-camera examination and release exculpatory material to the defendant. The fact that such material has not been forthcoming would imply that the trial court, as a public officer, has conducted his duties properly, and found nothing exculpatory. In any event, a defendant assigning error upon the denial of a *Brady* motion must do more than show suppression. *Dickey v. State*, 240 Ga. 634, 636 (242 SE2d 55). He must go further and show that the suppressed evidence might have

affected the outcome of the trial. *Legare v. State*, 243 Ga. 744, 754 (257 SE2d 247). In the absence of such a showing, the appellant has raised no error for our consideration.

8. Enumeration of error 8 complains the state erroneously was allowed to call an expert witness concerning the examination of a questioned document in face of the failure to produce to the defendant a copy of any scientific reports. The request for all *reports* of scientific tests, studies or experiments made no reference to a ten-day time frame nor to the provisions of OCGA § 17-7-211. The request was contained in a motion denominated a "Motion for Discovery" and cited as authority for the grant thereof the case of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215). When the experts testified for the prosecution, no mention was made of a written report having been prepared or that such a report if prepared had been delivered into the custody of the state.

Inasmuch as the motion for discovery did not mention the statute or make clear that the ten-day time frame was being invoked, the trial court did not err in allowing the testimony of the experts, especially in the absence of an objection thereto. *Massey v. State*, 251 Ga. 515, 516 (2) (307 SE2d 489). Moreover, the transcript is wholly silent as to whether the experts made a written report or whether the state had possession of such scientific report. Standing alone, testimony arising out of the tests and their results was competent and admissible evidence notwithstanding the request. The request was for written reports in the possession of the state and there was no showing that the state had any written reports to deliver to the appellant. *Billings v. State*, 161 Ga. App. 500 (288 SE2d 622). See also *Law v. State*, 165 Ga. App. 687 (302 SE2d 570). This enumeration is without merit.

9. In her last enumeration, Ms. Bone contends the trial court erred in denying her post-conviction bail. While Ms. Bone presented substantial evidence of her good reputation and trustworthiness, nevertheless, the trial court was presented some evidence that Ms. Bone could possibly be dangerous to herself or others in that when asked prior to her incarceration on these charges if she had a gun, her response was to the effect that she did not have a gun but she wished she had. Another adverse witness testified that he was concerned that Ms. Bone could try to intimidate him either physically or eco- nomically.

While others considering this testimony may conclude these reasons for denying post-conviction bail to be tenuous, our responsibility is to determine if there is any evidence to show a possible violation of one or more of the *Birge* standards (*Birge v. State*, 238 Ga. 88 (230 SE2d 895)). If there is an affirmative finding by the trial court as to any one or more of the four standards and there is any evidence to support that finding, the denial of a bond will be sustained by this

court. *Moore v. State*, 151 Ga. App. 413, 414-415 (260 SE2d 350).

The evidence in this case at least minimally meets those requirements. There is no merit in this enumeration.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED APRIL 10, 1986 —
REHEARING DENIED APRIL 23, 1986 —

*John A. Nuckolls*, for appellant.

*Joseph H. Briley, District Attorney, Fredric D. Bright, Assistant District Attorney*, for appellee.