76907. JACKSON v. THE STATE.
(374 SE2d 777)

SOGNIER, Judge.

George Watson Jackson was convicted of unlawful possession of diazepam, a controlled substance, and he appeals.

1. In his first enumeration of error, appellant contends the trial court erred by denying his motions for a directed verdict of acquittal or for a new trial because the State failed to offer any evidence in response to appellant's motion to suppress evidence obtained in a search of his trailer home pursuant to a no-knock warrant, and thus failed to carry its burden of proving the validity of the search warrant. This enumeration is without merit. Where no additional testimony was furnished, the facts recited in the affidavit itself are determinative of the question of whether probable cause existed for the issuance of a warrant. *Lewis v. State*, 126 Ga. App. 123, 127 (190 SE2d 123) (1972).

2. We turn therefore to the question of whether the affidavit was insufficient to support the issuance of a warrant, as appellant contends. The record reveals the warrant was issued by a magistrate pursuant to the affidavit of Investigator Brown of the Monroe County Sheriff's Department, who related information received from three sources that appellant and others were dealing in Quaaludes and

other controlled substances. The first source was a confidential informant whom Brown had known for more than six months, and who had provided reliable information on at least two prior occasions. This informant told Brown of overhearing conversations between appellant and Jimmy Smallwood on at least three occasions, in which they discussed selling illegal drugs, including Quaaludes, "crystal meth," and marijuana. He told Brown where both appellant and Smallwood lived, and related that he had seen marijuana in the home and car of Smallwood, and that appellant had warned him that he would be harmed if he mentioned the drug business.

The second source was a confidential informant who had given reliable information to the FBI in the past that had led to the seizure of illegal drugs on at least three occasions. This informant corroborated the first informant's information about where appellant and Smallwood lived, and told Brown that he had personally had conversations with appellant, Smallwood, and a third person which indicated involvement by those three people in the distribution of Quaaludes, crystal meth, and marijuana. He also advised Brown that these conversations led him to believe the three men were to receive a shipment of Quaalude tablets by Friday, July 18, 1986.

The third source was Captain A. J. Mathern of the Warner Robins Police Department. Captain Mathern told Brown that he had received information from two sources known by him to be reliable that appellant and others living near him were the source of Quaalude tablets in the Warner Robins area.

In addition, Brown obtained other corroborating information. He confirmed the addresses of appellant and Smallwood by checking with Captain Bohannon of the Monroe County Sheriff's Department, owner of the trailer park where both appellant and Smallwood lived. On July 21, 1986, a confidential informant advised FBI agent Twibell that appellant had told him the Quaalude tablets would be arriving the following weekend. That informant contacted Brown on July 26, 1986, and stated that appellant and Smallwood had told him the Quaaludes were in, and that they were going to spread them out to avoid detection.

In *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), the Supreme Court adopted an analysis based upon the "totality of the circumstances" made known to the magistrate to determine the sufficiency of an affidavit to support a search warrant. "Under [*Gates*], the task of the magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty as a reviewing court is simply to ensure

that the magistrate had a substantial basis for concluding that probable cause existed. . . . 'It is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." [Cit.]' [Cits.]" *State v. Hockman*, 171 Ga. App. 504, 505-506 (320 SE2d 241) (1984).

Here, affiant Brown had information from three different sources that appellant and others were dealing in Quaaludes and other drugs. These sources, and several others, corroborated each other. " ' "A magistrate's determination of probable cause should be paid great deference by reviewing courts." [Cit.] And, in cases where the demonstration of probable cause in a warrant is doubtful or marginal, "the resolution . . . should be largely determined by the preference to be accorded to warrants." [Cits.]' [Cit.]" *State v. Morrow*, 175 Ga. App. 743, 748 (4) (334 SE2d 344) (1985). " ' "A grudging or negative attitude by reviewing courts toward warrants," [cit.], is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case. [Cit.] A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' [Cit.] Utilizing this standard of review, which was adopted by the Georgia Supreme Court in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984), we find that the information, viewed as a whole, provided a substantial basis for the magistrate's finding of probable cause to believe that contraband was located on the premises." *Borders v. State*, 173 Ga. App. 110, 111-112 (325 SE2d 626) (1984).

3. Appellant contends the trial court erred by denying his motion for a directed verdict of acquittal at the conclusion of the State's evidence and by admitting the State's Exhibit 1 into evidence because the chain of custody was not adequately established, and the contents of the exhibit were different in description and number from that documented on the return of service.

On July 27, 1986, law enforcement officers from the Monroe County Sheriff's Department and the FBI, accompanied by a game warden, executed a no-knock search warrant on the trailer occupied by appellant and his wife. Deputy Keith Corley searched the closet in the bedroom where appellant and his wife had been sleeping, and found a paper bag on a shelf. Corley looked in the bag, and handed it to Jimmy Griffin, the game warden, who had witnessed the discovery of the bag. Griffin took the bag into the kitchen and prepared an inventory of its contents. He listed the contents of the bag as being two plastic bags, one containing 100 white tablets marked Lemon 214 and the other containing 61 white tablets marked Lemon 214.

The paper bag and its contents were introduced at trial as State's Exhibit 1. Griffin testified at trial that S-1 was the same bag he had received from Corley, and that there was no other bag of pills with which it could have gotten mixed up. He had control of the bag until he left the trailer, and left the bag with Investigators Mack Brown and Pete Jones of the Monroe County Sheriff's Department. Jones signed the inventory which had been prepared by Griffin. Asked at trial by counsel for appellant to read the number on the tablets, Jones first thought it was 712, but then agreed it was 714. Brown testified that he took S-1 to the crime lab in Macon and turned it over to Shawn Davis of the crime lab. Davis testified that she had received S-1 from Brown and found it to contain two plastic bags, one containing 100 white tablets marked Lemon 714 and the other containing 50 tablets marked Lemon 714. She testified that tablets marked Lemon 714 had been produced by the Lemon Company in the early 1980's under the trade name Quaalude, but that those tablets had been removed from the market in 1983 because of abuse, and that she knew the tablets in S-1 were not the original Quaalude tablets manufactured by Lemon because the "4" in the "714" stamped on the tablets she examined was different from that in the original Lemon-produced tablets. Davis further testified that she had tested the tablets, and determined they contained diazepam, a tranquilizer similar to but stronger than Valium.

Asked about the discrepancy in both the markings on the tablets and the number of tablets inventoried, Griffin testified that he had no prior familiarity with the marking Lemon 714, and that obviously, he had made a mistake both in reading the marking wrong and in miscounting the number of pills.

"The burden the State must carry to gain admission of such evidence . . . is to show with reasonable certainty that the evidence is the same as that [seized] and that there has been no tampering or substitution. [Cits.] The circumstances need only establish reasonable assurance of the identity of the evidence. [Cits.]" *Tyson v. State*, 184 Ga. App. 309, 311 (2) (361 SE2d 386) (1987). "The State need not negative every possibility of tampering . . . . [Cit.] '(W)hen there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.' [Cit.] Appellant has produced no evidence to show substitution of or tampering with the evidence. He relies solely on the discrepancy in testimony as to [the stamped number on the tablets and the number of tablets in one of the plastic bags.] However, it is clear from the record that [State's Exhibit 1] was in the custody of the law enforcement officers at all times until taken to the State Crime Lab. Thus the State has shown with 'reasonable certainty' that the [exhibit] offered into evidence is the same as that which was seized." *Anderson v. State*, 247 Ga. 397,

399 (2) (276 SE2d 603) (1981).

We find that the chain of custody was adequately accounted for. The discrepancies noted would go to the weight of the evidence and not its admissibility. "The weight of the evidence and the credibility of the witnesses are questions for the factfinder. [Cits.]" *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986). Here, the jury chose to believe the State's witnesses as to State's Exhibit 1, and it was authorized to do so. We find no merit in this enumeration.

4. Appellant maintains the trial court erred by denying his motion for a directed verdict of acquittal at the close of all the evidence because appellant denied any knowledge of the presence of any illegal substance in his home, and nothing in the record shows appellant had actual or constructive possession of State's Exhibit 1. We do not agree.

Contrary to appellant's argument that no evidence showed he had knowledge of the contraband or the power or intention to control it, and that it could have been the property of someone else in the household, the contraband was found in the closet of his bedroom and consequently he had at least joint constructive possession of the contraband, along with his wife, who was also arrested and indicted. Further, there was testimony from the law enforcement officers that appellant appeared to be under the influence of something, but that they detected no odor of alcohol. The jury thus had the task of evaluating the materially conflicting testimony. "We cannot say which evidence the jury believed and which evidence the jury rejected, nor will we now substitute our judgment because we did not have the opportunity to hear the witnesses and observe their demeanor. [Cits.] The verdict evinces that the jury chose to disbelieve the material parts of [appellant's] testimony . . . . [Cits.] We must view the evidence in a light most favorable to the verdict and, in doing so, we conclude that the evidence was sufficient to exclude every *reasonable* hypothesis save [appellant's] guilt and that any rational trier of fact could have found [appellant] guilty beyond a reasonable doubt. [Cits.]" *Castillo v. State*, 166 Ga. App. 817, 821 (1) (305 SE2d 629) (1983).

5. Appellant finally alleges the trial court erred by charging the jury that it could not consider the guilt or innocence of his wife in determining his guilt or innocence, and by failing to charge the jury as to equal access as requested. Appellant argues that although normally the guilt or innocence of another party may not be considered by the jury, in this case the trial court deprived appellant of his defense of equal access by charging the jury they could not consider the guilt or innocence of his wife. Because appellant and his wife were indicted jointly, we find no merit in this enumeration, since "[t]he 'equal access' rule is not nearly as broad as [appellant] sought to apply it at trial or as [he] now would have us apply it. . . . The rule,

conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband. [Cits.]" *Castillo*, supra at 821-822 (2). Further, the trial court did charge the jury that if they determined from the evidence "that persons other than [appellant] had equal opportunity to possess or place the articles of contraband upon the described premises, then in that event, [they] should acquit [appellant] unless it be shown beyond a reasonable doubt that [appellant] knowingly possessed the contraband or shared possession or control with another person and aided and abetted or procured the other in possessing and having under his control contraband." We find that this did not deprive appellant of any "equal access" defense except as to his wife, to whom the rule would not apply. Accordingly, we find no error in the trial court's failure to charge the jury in the exact language requested by appellant. *Daniels v. State*, 184 Ga. App. 689, 690 (2) (362 SE2d 775) (1987).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 7, 1988 —
REHEARING DENIED OCTOBER 18, 1988 

*F. Robert Raley*, for appellant.

*E. Byron Smith, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.