## A93A1372. FAIN v. THE STATE.
### (439 SE2d 64)

SMITH, Judge.
 Larry Fain was indicted with Michelle Hamilton for the offenses of possession of methamphetamine with intent to distribute, OCGA § 16-13-30 (b), and possession of marijuana, OCGA § 16-13-30 (j) (1). Immediately prior to trial, Hamilton pled guilty to possession of methamphetamine with intent to distribute. The jury found Fain guilty of both charges.
 In the course of investigating information they received regarding drugs at Fain's home, Snellville police officers verified that Fain was the owner or lessor of the premises; they then posed as trash collectors, riding a garbage truck in order to pick up Fain's trash on four different occasions. After the trash was collected from Fain's house it was kept separate from other trash. At the end of Fain's street, it was transferred to another vehicle and transported to another location for examination. Several suspicious items found in Fain's trash led the officers to obtain a search warrant for his home. See *California v. Greenwood,* 486 U. S. 35 (108 SC 1625, 100 LE2d 30) (1988).
 Fain and Hamilton were in the house on the morning the warrant was executed. The officers found three plastic baggies containing white powder in Hamilton's purse, which was on the coffee table in the den. A forensic chemist from the state crime laboratory testified at trial that these baggies contained 5.5 grams of methamphetamine. The officers also found a .357 revolver, a beeper, hypodermic needles, and a mirror on which there was white powder residue, a razor blade, and a straw in the master bedroom; triple beam scales and a white crystal powder commonly used as a cutting agent on a shelf in the master bedroom closet; a fast food tray with a green leafy substance, a spoon containing balls of cotton, a white powdery residue, and a hypodermic needle cap in the master bathroom; numerous baggies with cut-out corners and corners cut from plastic baggies in an unused shower in the master bath; and a plastic baggie containing seeds,

identified at trial as marijuana, in the kitchen.

At trial, Hamilton testified that although she previously had used it, Fain "turned her on" to methamphetamine, supplying her with the drug basically in return for her "companionship." She began spending more and more time at his home and had her own room there. She denied ever actually witnessing Fain selling methamphetamine, but she related conversations she had with Fain regarding his distribution of the drug to others. She testified that the two baggies of methamphetamine found in her purse had been given to her by Fain; she found the third in the laundry room and took it.

Detective Harold Thomas testified that after arresting Fain, he had advised him of his rights, told him traces of drugs had been found in the bedroom, and asked him where the rest of the drugs were. Fain at first denied there were more drugs in the house but then stated "[t]here's a gram back there," directing attention to the bathroom. However, no more drugs were found in the bathroom. Notes extracted from Fain's garbage, as well as notes found in the living room, were introduced into evidence. Among other things, the notes contained lists of names followed by monetary amounts. Testimony of police officers established that such notes were commonly used as normal bookkeeping practices in the drug trade.

1. In three enumerations of error, Fain raises the general grounds. He makes several arguments in support of his contention that the evidence was insufficient to authorize the jury to convict him, first arguing that no evidence existed that the white powdery substance found on various items in his bedroom was methamphetamine. However, the methamphetamine charge against Fain was based on his constructive possession of the drugs found in Hamilton's purse and not on the white powder on the items found in his bedroom. The items found in his bedroom, commonly used drug paraphernalia, were relevant to show Fain's involvement with drugs.

Fain also maintains that only Hamilton's testimony connected him with the drugs found in her purse and, since she was an accomplice, it was necessary for her testimony to be corroborated in order to support his conviction. OCGA § 24-4-8; see *Claybrooks v. State*, 189 Ga. App. 431, 432 (375 SE2d 880) (1988). The principle Fain cites is correct. In Georgia, a defendant may not be convicted on an accomplice's uncorroborated testimony. The required corroboration must be "independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty." (Citations and punctuation omitted.) Id. However, OCGA § 24-4-8 provides that "corroborating circumstances may dispense with the necessity for the testimony of a second witness." Slight corroborative evidence from an extraneous source is all that is required to support the verdict, and it may be by circumstantial evidence. *Bennett v.*

*State*, 202 Ga. App. 699 (415 SE2d 310) (1992). It is for the jury to decide whether the evidence offered as corroboration is sufficient to support a conviction, and "[i]f the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said as a matter of law, that the verdict is contrary to the evidence." (Citations and punctuation omitted.) *Cody v. State*, 195 Ga. App. 318 (1) (393 SE2d 692) (1990).

In this case, there was no corroborating *testimony*. Unlike *Claybrooks*, though, the physical evidence found in Fain's home, particularly that found in the bedroom occupied by him and the bath used by him, was circumstantial evidence corroborating Hamilton's testimony that connected Fain with the drugs.

Fain argues as well that four people were living at the house, including his brother and his daughter, all of whom had equal access to the places where drugs were found. However, it was undisputed that Fain was the owner or lessor of the premises, raising a rebuttable presumption that the drugs were his. *Mobley v. State*, 190 Ga. App. 771, 773 (1) (380 SE2d 290) (1989). No evidence was introduced to show that any of the other occupants of the house had access to Fain's bedroom or bathroom, where numerous items of drug paraphernalia were found. "The equal access rule which appellant invokes [cits.] applies for the most part to areas which are open, notorious and easily accessible to other persons. The [items of drug paraphernalia were] found in a bedroom in areas where accessibility was that of the occupants of the bedroom and not others. [Cits.]" *Cantrell v. State*, 204 Ga. App. 330, 331 (419 SE2d 141) (1992). Although it is arguable that Hamilton, who spent some time in Fain's bedroom with him, had equal access to the items, the equal access doctrine does not apply to those charged with being in joint constructive possession of contraband. *Jackson v. State*, 188 Ga. App. 834, 838-839 (5) (374 SE2d 777) (1988). The jury was charged on sole and joint possession, actual and constructive possession, and equal access. They were authorized to conclude that Fain and Hamilton were in joint possession of methamphetamine with intent to distribute and that Fain possessed marijuana. See *Butler v. State*, 192 Ga. App. 710, 712-713 (2) (386 SE2d 371) (1989).

2. Fain contends the trial court erred in the admission of certain evidence over objection.

(a) He argues that it was error to admit into evidence the notes found in his trash, because no evidence showed that they were written by him and others had equal access to the trash. Even assuming the equal access doctrine may be applied in the context of the admissibility of such evidence, we find no error. Although it is true that no witness identified the handwriting on the notes as Fain's, the State verified that Fain was the owner or lessor of the premises from which

the garbage was taken, and similar notes were found in the living room on an envelope addressed to Fain. Since Fain was not on trial for possessing the notes, the State was not required to prove Fain's possession of the notes beyond a reasonable doubt. *Brooks v. State*, 197 Ga. App. 194, 195 (2) (397 SE2d 622) (1990). The notes were relevant to the issues of whether probable cause existed for the search warrant and whether Fain was distributing drugs. Whether they were written by Fain or by another person was an issue affecting the weight of the evidence, not its admissibility, and therefore was for the jury. We find sufficient foundation for the notes' admission into evidence. Id. at 195-196 (2).

(b) Fain maintains the trial court erred in admitting certain photographs depicting some of the objects found in the search of his house. These included the depiction of a white powdery substance that was never identified as methamphetamine. The transcript does not support Fain's assertion that a police officer testified in a manner that suggested or conveyed the impression that the substance was methamphetamine. In identifying the photographs, the officer consistently used the terms "white powder residue," "white powder substance," and "white powdery substance." References to drugs were made in the course of later explaining, hypothetically, the ways in which the various items of paraphernalia found in Fain's home could be used. However, Fain objected to the introduction of the photographs before these explanations were made. We find no error in the introduction of the photographs.

3. Because Fain did not request a charge on the necessity of the corroboration of accomplice testimony, his contention that the trial court erred in failing to give such a charge lacks merit. *Harvey v. State*, 205 Ga. App. 863, 864 (2) (424 SE2d 18) (1992). See *Bone v. State*, 178 Ga. App. 802, 808 (6) (345 SE2d 46) (1986).

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 29, 1993 —
RECONSIDERATION DENIED DECEMBER 15, 1993 — 

*Glyndon C. Pruitt*, for appellant.
*Daniel J. Porter, District Attorney, David Keeton, Assistant District Attorney*, for appellee.