A94A1744. LEWIS v. THE STATE.
(451 SE2d 116)

RUFFIN, Judge.

Lewis appeals his conviction of driving under the influence of alcohol and driving with an unlawful alcohol concentration.

Lewis was arrested after a police officer responded to a one-vehicle accident call. The officer found Lewis with an injured leg and noticed a strong odor of alcohol about him, that he had bloodshot eyes and his speech was slurred. Lewis was taken to the hospital, where he was arrested for driving under the influence. After his arrest, Lewis consented to a blood-alcohol test.

A lab technician took two blood samples from Lewis. The technician testified he sealed the tubes with color-coded stoppers, one grey the other red, and put Lewis's name, the date, time and place on each tube. The tubes were then given to the arresting officer, who testified

he wrapped them together in plastic and put them in an evidence locker, which he identified as locker L19 on the property record form. A county evidence technician testified she removed the samples the next day from evidence locker L13, put additional identifying information on them, and placed the samples in the evidence room refrigerator. When asked about the discrepancy between locker numbers, the officer testified he believed he mistakenly wrote down the number identifying the locker below locker L13. The evidence technician stated it is possible to confuse the lockers and that she was sure the blood she took out of locker L13 belonged to Lewis. A second evidence technician testified he removed the samples from the refrigerator and took them to the crime lab.

A forensic chemist with the Georgia Bureau of Investigation's Division of Forensic Sciences tested the blood. He testified he received two tubes of blood "labled with the name Michael Lewis," one with a grey stopper and the other with a yellow and black stopper. He further stated he only tested blood from the tube with the grey stopper. The print-out from the testing machine, a gas chromatograph, indicated a blood-alcohol concentration of .206. The chemist then compiled a report containing that information which was admitted at trial. The print-out was not introduced into evidence.

1. Lewis contends the trial court erred in denying his motion to quash Count 2 of the accusation, charging Lewis with "driving with unlawful alcohol concentration" in that he "was in actual physical control of a moving vehicle with an alcohol concentration of 0.10 grams or more, within three (3) hours after such actual physical control of a moving vehicle ended." Lewis asserts the accusation was fatally defective because it lacked a material element of the crime charged.

OCGA § 40-6-391 (a) (4) provides "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.10 grams or more at any time within three hours after such driving or being in actual physical control *from alcohol consumed before such driving or being in actual physical control ended.*" (Emphasis supplied.) Lewis asserts that since the emphasized language was omitted from the accusation, he could have admitted the allegations and not have committed a crime.

OCGA § 17-7-71 (c) provides "[e]very accusation which states the offense in the terms and language of the law or so plainly that the nature of the offense charged may be easily understood by the jury shall be deemed sufficiently technical and correct."

" 'The true test of the sufficiency of an indictment [or accusation] is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be

prepared to meet. . . . As long as the defendant is informed of the charges against him so that he may present his defense at trial and not be surprised by the evidence against him, as well as protect against another prosecution for the same offense, the indictment is sufficient. Thus, if a defendant is not misled to his prejudice by any imperfection in an indictment an appellate court will not reverse. . . . [Cit.]" *Broski v. State*, 196 Ga. App. 116, 117 (1) (395 SE2d 317) (1990).

Lewis relies on the rule stated in *Pullen v. State*, 199 Ga. App. 881 (406 SE2d 283) (1991), that if a "defendant could admit the accusation and still be innocent of the offense charged, the accusation is defective." While we agree the accusation was not perfect, it apprised Lewis that he was being charged with driving with an unlawful alcohol concentration of 0.10 grams or more within three hours of operating a vehicle. Moreover, "this court on appeal must apply a harmless error test in order to determine if the error has prejudiced defendant and thus requires reversal of his conviction. . . . Thus, a defendant who was not misled to his prejudice by any imperfection in the indictment or accusation or citation cannot obtain reversal of his conviction on that ground. Defendant alleges no prejudice to himself and we can discern none." (Citations and punctuation omitted.) *Broski*, supra at 118. See also *Hall v. State*, 200 Ga. App. 585 (3) (409 SE2d 221) (1991).

2. Lewis further asserts the blood test results should not have been admitted on several grounds. He contends the blood tests did not satisfy the requirements of OCGA § 40-6-392 (a) (1), because the State did not show the analysis was performed according to methods approved by the Division of Forensic Sciences by an individual possessing a valid permit issued by the division for this purpose. OCGA § 40-6-392 (a) (1) provides in pertinent part, before a blood test can be considered valid, it must "have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation . . . by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. *The Division of Forensic Sciences of the Georgia Bureau of Investigation is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits*, which shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences." (Emphasis supplied.)

Chapter 92-3 of the Rules of the Georgia Bureau of Investigation sets forth the blood testing qualification requirements referenced above. Rule 92-3-.06 (7) provides that "[a]ll blood tests will be performed by the Division of Forensic Sciences, or by an individual authorized in accordance with Rule 92-3-.02 (1) of these regulations."

In the instant case, the individual who tested the blood was a forensic chemist with the Division of Forensic Sciences for 20 years. He testified the blood test he performed in this case was in conformance with what he was taught by the Division of Forensic Sciences. Thus we find that the method used to test the blood was approved by the Division of Forensic Sciences. Furthermore, the legislature's delegation of *complete* authority to the Division of Forensic Sciences to regulate blood testing and permitting, including the authority to "approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses" authorizes the division to determine the competence of its own personnel to conduct such an analysis. Under such circumstances, we do not believe the legislature intended to require the Division of Forensic Sciences, as the permit issuing authority, to issue a permit to itself. Accordingly, we also find the Division of Forensic Sciences' forensic chemist was authorized to conduct the test under OCGA § 40-6-392 (a) (1) and find no error in the admission of his testimony regarding the analysis performed on Lewis's blood samples.

3. Lewis also asserts the blood samples were not adequately preserved by a proper chain of custody. While there was some confusion concerning the color of one of the tube stoppers, the evidence was clear that the only blood actually tested had a grey stopper and was labeled as Lewis's. " '[T]here is nothing in the record that creates a suspicion that the (samples) tested (were) other than (those) taken from [Lewis].' [Cit.]" *Brinson v. State*, 208 Ga. App. 556, 557 (2) (430 SE2d 875) (1993). Furthermore, although there was conflicting testimony regarding the evidence locker number, the State offered an explanation as to why this was so. *Williamson v. State*, 194 Ga. App. 439, 440 (4) (390 SE2d 658) (1990). It is obvious the officer had a faulty recollection concerning the locker number. See *Brinson*, supra at 557. "The discrepancies noted would go to the weight of the evidence and not its admissibility. 'The weight of the evidence and the credibility of the witnesses are questions for the factfinder.' Here, the jury chose to believe the State's witnesses as to [the blood samples], and it was authorized to do so." (Citations omitted.) *Jackson v. State*, 188 Ga. App. 834, 838 (3) (374 SE2d 777) (1988). "[N]one of the points argued by appellant amounts to evidence of tampering or casts any doubt on the identity of the exhibits so as to amount to a broken chain of custody. There being, at most, bare speculation of tampering or substitution, the trial court correctly admitted the samples into evidence." (Citations and punctuation omitted.) *Brinson*, supra at 557.

4. We do not agree with Lewis that the State was required to provide him with a copy of the gas chromatograph print-out of the blood test result. OCGA § 17-7-211 (b) entitled Lewis to copies of "any written scientific reports in the possession of the prosecution

which will be introduced in whole or in part against the defendant by the prosecution. . . ." Lewis was provided with a copy of the Division of Forensic Sciences' report containing the results of the blood test. "Even though he was not given a copy of the test print-out, this [report] is sufficient to give defendant notice of the test result." *Ratliff v. State*, 207 Ga. App. 112, 113 (427 SE2d 85) (1993). Accordingly, we find no error here.

5. We also do not agree with Lewis that the blood test report should have been excluded as hearsay. "The [person] with first hand knowledge of the contents of [the report] testified at trial, and the trial judge was authorized to conclude that [the report] was made in the regular course of business and that it was in the regular course of business to make [the report]. . . . [Cit.]" *Millwood v. State*, 166 Ga. App. 292, 293 (5) (304 SE2d 103) (1983).

6. Lewis asserts as error the admission of testimony of the blood test results, because the best evidence of the results was not introduced by the State. Since Lewis "made no objection to the admissibility of the test results on the ground set forth in this enumeration, he cannot raise the issue for the first time on appeal. [Cit.]" *Hudgins v. State*, 176 Ga. App. 719, 721-722 (5) (337 SE2d 378) (1985).

7. Finally, Lewis contends the evidence was insufficient to support the verdict. We are satisfied that the evidence was sufficient to enable any rational trier of fact to find appellant guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Osteen v. State*, 176 Ga. App. 722 (2) (337 SE2d 369) (1985).

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson and Smith, JJ., concur. Blackburn, J., concurs in part and dissents in part.*

BLACKBURN, Judge, concurring in part and dissenting in part.

I dissent from the majority's judgment and its analysis in Divisions 2 and 3; however, I concur with the majority's analysis in the remaining divisions.

In Division 2, the majority determines that although OCGA § 40-6-392 (a) (1) expressly requires the individual conducting the blood test to possess a permit, such a permit is not required because the rules of the Georgia Bureau of Investigation do not require a permit for blood tests performed by the Division of Forensic Sciences. The majority fails to recognize the superior authority of the Georgia legislature in the promulgation of OCGA § 40-6-392 over the rules adopted by the Georgia Bureau of Investigation.

In *Harden v. State*, 210 Ga. App. 673, 674 (436 SE2d 756) (1993), we recognized that OCGA § 40-6-392 established "a mandatory requirement applicable in any criminal case arising out of an alleged

violation of OCGA § 40-6-391 and in which that violation is an essential element of the asserted criminal liability. The mandatory requirement is that when the State seeks to prove the violation by evidence of a chemical test, the State has the burden of demonstrating compliance with the statutory requirements." (Citation and punctuation omitted.) Id. We determined the State's failure to prove the qualifications of the person who withdrew the blood for testing rendered the evidence of the blood test inadmissible. Id. at 675.

OCGA § 40-6-392 (a) (1) requires that the person performing the test possess a valid permit. In the present case, the State did not present evidence that this requirement was met. Therefore, as in *Harden*, supra, I would find that the evidence of the blood test was inadmissible.

In Division 3, the majority finds that the State adequately proved the proper chain of custody. I cannot agree. The State failed to meet its burden of proving the proper chain of custody. The discrepancies in the descriptions of the samples' color-coded stoppers and locker numbers by several witnesses cast doubt on the identity of the sample tested. This is not a case where two officers both remember being the person who mailed the correct blood sample to the laboratory, as in the *Brinson* case cited by the majority. Nor did the State's explanation of the conflicting testimony (that the officer must have been mistaken as to the locker number containing the sample) demonstrate that the correct sample was tested, especially in light of the technician's testimony regarding the color of the stoppers on the samples. See *Williamson*, cited by the majority.

The present circumstances go beyond a credibility and weight issue and the discrepancies are so numerous that the admissibility must be denied. Contrary to the argument of the majority, there was no evidence giving any assurance of the identity of the blood sample. Testimony revealed that the blood sample was put into two tubes in a certain locker. There was no evidence presented that those tubes were ever tested, as the tested tubes came from a different locker number and had different colored stoppers. At a minimum, this establishes that there has been a tampering with the evidence for which the State has offered no explanation. If these facts merely go to the weight of the evidence, the majority would preclude a defendant from ever being able to suppress illegal evidence as long as some *possibility* is offered by the State, in explanation of one of the discrepancies. The explanation that the tested tube had a grey stopper (as did one of the original tubes), ignores the fact that the tubes were together and the original pair included a red-stoppered tube while the tested pair contained a yellow and black-stoppered tube. There is no explanation for how that occurred. It is the State which has the burden of proof, not the defendant. Under the present facts, the State has not established

a reasonable assurance of the identity of the blood sample. See *Patterson v. State*, 224 Ga. 197 (2) (160 SE2d 815) (1968).

DECIDED DECEMBER 5, 1994.

*Robert W. Chestney,* for appellant.

*Gerald N. Blaney, Solicitor, Jessica R. Towne, Richard E. Thomas, Assistant Solicitors,* for appellee.