A93A1044. HARDEN v. THE STATE.
(436 SE2d 756)

JOHNSON, Judge.
William Harden, Jr., was convicted of homicide by motor vehicle in the first degree, operating a motor vehicle after being declared a habitual violator, and driving under the influence of alcohol. Harden appeals his convictions and the denial of his motions for a directed verdict as to the homicide by motor vehicle and driving under the influence of alcohol charges.[1]

---

[1] Harden apparently does not appeal the habitual violator conviction. In his motion for a directed verdict, he only mentioned the DUI and the vehicular homicide charges. In addition, Harden testified on cross that he had been declared a habitual violator. Only the third enumeration of error has any application to the habitual violator charge.

On April 12, 1991, Harden was driving along a curved, wet highway when his pickup truck swerved off the road, skidded and struck a tree. Harden's passenger was killed. Harden had been drinking, though the deputy sheriff who arrived at the scene did not detect the presence of alcohol on Harden's breath. Harden was slightly injured and was taken to a hospital. There he met a state trooper who was investigating the fatal accident. The trooper asked hospital personnel to conduct a blood-alcohol test on Harden and was told that a lab technician would perform the procedure. Thereafter, someone in a hospital uniform appeared and withdrew Harden's blood. The state trooper knew nothing about the person's qualifications. At trial, the State offered no other evidence of the person's qualifications.

1. Harden asserts that the trial court erred in admitting the results of his blood-alcohol test into evidence because the State failed to prove that a qualified person withdrew his blood as required by OCGA § 40-6-392. We agree. The evidence should not have been admitted.

"When a person shall undergo a chemical test at the request of a law enforcement officer [under Code section 40-5-55], *only* a physician, registered nurse, laboratory technician, emergency medical technician, or other qualified person may withdraw blood for the purpose of determining the alcoholic content therein." (Emphasis supplied.) OCGA § 40-6-392 (a) (2).

This court has construed OCGA § 40-6-392 "as establishing a mandatory requirement applicable in any criminal case arising out of an alleged violation of OCGA § 40-6-391 and in which that violation is an essential element of the asserted criminal liability. The mandatory requirement is that when the State seeks to prove the violation by evidence of a chemical test, the State has the burden of demonstrating compliance with the statutory requirements." (Punctuation omitted.) *Munda v. State*, 172 Ga. App. 857, 858 (1) (324 SE2d 799) (1984). This burden may be satisfied in at least two ways. First, as is generally the practice in other circuits throughout Georgia, the State may call as a witness the person who withdrew the blood and have that person testify as to his or her qualifications. See *Thurman v. State*, 172 Ga. App. 16, 17 (1) (321 SE2d 780) (1984); *Gooch v. State*, 155 Ga. App. 708, 711 (6) (272 SE2d 572) (1980). Secondly, the State may present a certificate from the Secretary of State or the Department of Human Resources that the person was, at the time the blood was drawn, licensed or certified in one of the professions listed in OCGA § 40-6-392 (a) (2). OCGA § 40-6-392 (e). We note that there would be no reason for the legislature to include this subsection on *how* qualifications may be proven at trial if it was not necessary for qualifications to be proved.

The State argues that it would be unreasonable to expect a law

enforcement officer to ascertain the qualifications of the person withdrawing the blood before the procedure can be performed. We agree that such an expectation would be unreasonable. However, that argument misses the point. A law enforcement officer is not expected to know the qualifications of the person withdrawing the blood. All that is required, in terms of qualifications, is that the State prove *at trial* that the person who performed the procedure was qualified. Here, the State attempted to prove that the person who withdrew Harden's blood was qualified through the testimony of a state trooper who knew nothing about her qualifications. The trooper could only testify to what hospital personnel had told him. This testimony is clearly hearsay. "Hearsay evidence has no probative value even if it is admitted without objection." (Citations and punctuation omitted.) *Shaver v. State*, 199 Ga. App. 428, 429 (1) (405 SE2d 281) (1991); see also *Brown v. State*, 206 Ga. App. 800, 802 (427 SE2d 9) (1992). Because the only evidence offered by the State as to the qualifications of the person who withdrew Harden's blood was inadmissible hearsay having no probative value, the State has failed to present any competent evidence showing that the mandatory requirements of OCGA § 40-6-392 (a) (2) have been met. Breach of the requirement renders evidence of the blood test offered by the State inadmissible to establish a presumption that the alleged drunken driver was driving under the influence. *Munda,* supra. Therefore, we hold that the trial court erred in admitting evidence of the blood-alcohol test.

Although the test results were erroneously admitted, we must also determine whether, under the facts of the case, the admission was harmless error. When Harden presented his case, he admitted that he and his friend had consumed about two pitchers of beer before he got into the truck and that he drank more beer while he was driving. On cross-examination, Harden flatly admitted that he was not sober at the time of the accident. Based upon this evidence, a reasonable trier of fact could have found him guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Morris v. State*, 205 Ga. App. 650 (423 SE2d 54) (1992).

Thus, any error in the admission of the test results would not mandate a reversal because it is highly probable that that error did not contribute to the guilty verdicts. *Johnson v. State*, 204 Ga. App. 246, 247-248 (4) (419 SE2d 107) (1992).

2. Harden also claims that the trial court erred in denying his motion for a directed verdict because, when the State rested, there was no evidence proving that he was driving under the influence. We disagree.

"A directed verdict of acquittal should be granted only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a

verdict of acquittal. OCGA § 17-9-1. In reviewing the denial of a motion for a directed verdict made at the close of the State's case, an appellate court considers not only the evidence produced in the State's case-in-chief, but also any evidence introduced subsequent to the motion by the defense. *Bethay v. State*, 235 Ga. 371, 374-375 (219 SE2d 743) (1975); *Hawkins v. State*, 195 Ga. App. 739 (395 SE2d 251) (1990)." (Punctuation omitted.) *Tyler v. State*, 198 Ga. App. 685, 687-688 (2) (402 SE2d 780) (1991). As discussed in Division 1 above, there was a conflict in the evidence introduced during the course of the trial and the evidence did not demand a verdict of acquittal. Instead, the evidence in the case was sufficient to support the guilty verdicts. Therefore, the court did not err in denying Harden's motion for a directed verdict.

3. Harden also contends that the trial court erred in recharging the jurors, upon their request, on the issue of intent. Although Harden's argument is not clear, he appears to claim that during the recharge the judge intimated his opinion as to Harden's guilt, which would be improper under OCGA § 17-8-57. We have examined the recharge and disagree. Furthermore, we note that Harden failed to specifically object to the recharge at trial and has therefore waived the issue for purposes of appeal. *Butts v. State*, 198 Ga. App. 368, 369 (2) (401 SE2d 763) (1991).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 14, 1993 —
RECONSIDERATION DENIED OCTOBER 28, 1993.

*O. Dale Jenkins*, for appellant.
*Dupont K. Cheney, District Attorney, J. Thomas Durden, Jr., Assistant District Attorney*, for appellee.