A96A1938. BAZEMORE v. THE STATE.
(484 SE2d 673)

BIRDSONG, Presiding Judge.

Douglas A. Bazemore was charged with driving with an unlawful alcohol concentration, speeding, and failure to maintain lane. The trial court directed a verdict of acquittal for failure to maintain lane. Bazemore was acquitted of driving under the influence to the extent that it was less safe, but was found guilty of driving with an unlawful alcohol concentration (.13 grams percent) and speeding. Bazemore enumerates five errors relating to the denial of his motion to exclude from evidence the State's blood test results. *Held*:

1. Appellant contends the trial court erred in denying his motion to suppress the chemical blood test results because the State failed to prove the qualifications of the person who drew his blood pursuant to OCGA § 40-6-392 (a) (2) and (e).

When the State seeks to prove a violation of OCGA § 40-6-391 with evidence of a chemical test, OCGA § 40-6-392 (a) (2) requires the State to prove *at trial* the "qualifications" of the person who drew appellant's blood pursuant to OCGA § 40-6-392 (a) (2). In *Harden v. State*, 210 Ga. App. 673, 674 (436 SE2d 756), we held this burden may be satisfied in *"at least"* (id.) two ways. First, the State may call as a witness the person who drew the blood and have him testify as to his qualifications. Secondly, as provided by OCGA § 40-6-392 (e), the State *"may"* present a "certification" by the office of the Secretary of State or the Department of Human Resources that the person was "licensed or certified" in one of the professions listed in OCGA § 40-6-392 (a) (2). *Harden* at 674.

OCGA § 40-6-392 (e) provides that "[a] certification by the office of the Secretary of State or by the Department of Human Resources that a person was a licensed or certified [technician] at the time the blood was drawn *shall be admissible* into evidence for the purpose of establishing that such person was qualified to draw blood as required by this Code section." (Emphasis supplied.) This statute merely provides such certification is *admissible*; it does not *require* such evidence.

An arresting officer testified that appellant's blood was drawn at DeKalb Medical Center by Clarence Heard. Heard did not testify. The State submitted a "self-authenticating" document to prove his qualifications: a "Records Search" on stationery of "Georgia Department of Human Services, Office of Regulatory Services Health Care Section" at a certain address. It is signed February 16, 1996 by "Reviewing Official" Genella Forrester and states: "Records in the Diagnostic Services Unit, Health Care Section, Office of Regulatory Services verify that Clarence Heard is *classified* as Medical Laboratory Technician and that the above individual was first classified as such [in] December, 1986 and has been to our knowledge, so classified continuously since this date." (Emphasis supplied.)

Appellant objected that this paper was not itself a "certification" and that it did not say Heard was "certified." Appellant contends "classification" is not the "certification" or "licensing" which § 40-6-392 (e) requires the State to prove. Nothing in § 40-6-392 *requires* the person taking a blood sample to testify at trial as to his "qualifications." Thus, the State was authorized to prove Heard's qualifications by means of statutorily authorized certification.

Appellant contends the certification admitted at trial is only an official records search by someone at DHR and is thus hearsay under *Harden,* supra. This argument is inapposite. The evidence of qualifications in *Harden* was hearsay because it was offered by a state trooper who could testify only to what hospital personnel had told him. Id. at 675. The document in this case is an official records search made in the course of business by a "Reviewing Official" at DHR. OCGA § 24-7-20 provides that the "attestation of any public officer . . . of this state . . . shall give sufficient validity or authenticity to any copy . . . of any record, document, paper of file, or other matter or thing in his respective office, or pertaining thereto, to admit the same in evidence." Although the document merely states that Heard was "classified" as a medical laboratory technician, nothing in § 40-6-392 expressly provides that such a certification is insufficient to prove "qualifications." Appellant does not contend this document is unauthentic. Absent a specific, supported challenge to the facts asserted by the official record, we conclude that the DHR certificate is in substantial compliance with the requirement in § 40-6-392

(a) (2). OCGA § 1-3-1 (c).

2. Appellant contends the State failed to prove the test result was "valid" pursuant to OCGA § 40-6-392 (a) (1) (A). That statute provides that to be "valid," chemical analysis of bodily substance shall have been *"performed according to methods approved by the Division of Forensic Sciences [DFS] of the Georgia Bureau of Investigation [GBI],"* on a machine *"which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order,"* and that the machine was operated *"by an individual possessing a valid permit issued by the [DFS] for this purpose."* (Emphasis supplied.)

The statute further provides, in context, that the GBI/DFS *"shall approve satisfactory techniques or methods* to ascertain the qualifications and competence of individuals to conduct analyses"; the GBI/DFS *"shall approve . . . techniques or methods . . . to issue permits,* along with *requirements* for properly operating and maintaining any testing instruments . . . *and to issue certificates* certifying that instruments have met those requirements." (Emphasis supplied.)

The chemist who tested appellant's blood sample introduced his permit authorizing him to test blood for alcohol content. He testified that he tested appellant's blood sample using a technique or machine called headspace gas chromatography which "is the approved method for these types of analyses," and he testified in detail as to the procedure he used. He testified the GBI crime laboratory has controls and techniques to make sure that a test machine is working, and he described those controls and techniques. He testified that the machine used to test appellant's blood was brand new and that therefore there were no maintenance records on that machine and the factory representative "has not had to come out," but to the best of his knowledge it was working properly based on the controls and methods he used to test the accuracy of the machine. He testified he did not "lift up the hood" to see if this machine had all its parts because he is not an engineer, but that according to the tests he used, the machine was working "fine."

The chemist had his GBI/DFS testing manual at trial and offered to give them to appellant's counsel who refused to receive them. At the pretrial hearing on these issues, a copy of the rules and regulations enacted by the GBI pursuant to this statute was available and was studied by the court, the State's attorney and appellant's attorney. According to appellant's counsel's reading of these rules into the record, they provide that *"all blood tests will be performed in accordance with a quantitative gas chromatographic technique."* (Emphasis supplied.)

We find the State sufficiently complied with its burden to prove the test result in this case was "valid" under OCGA § 40-6-392 (a) (1)

(A). The State sufficiently proved by competent circumstantial evidence that the test was performed "according to methods approved by the [GBI/DFS]," and "on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order," and "by an individual possessing a valid permit issued by the [GBI/DFS] for this purpose."

The State also proved that the GBI/DFS had "approve[d] satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses" and "to issue permits, along with requirements for properly operating and maintaining any testing instruments, and to issue certificates certifying that instruments have met those requirements."

We find *Hobbs v. State*, 224 Ga. App. 314 (480 SE2d 330); *Cullen v. State*, 223 Ga. App. 356 (477 SE2d 620); *State v. Kampplain*, 223 Ga. App. 16 (477 SE2d 143); and *State v. Hunter*, 221 Ga. App. 837 (473 SE2d 192) to be distinguishable from this case. In *Hobbs* and *Hunter*, it was undisputed that the breath test machine lacked all its parts; likewise in *Kampplain* (id. at 17), the breath test machine evidently lacked all its parts. In *Cullen* at 357, we said that *Hunter* and *Kampplain* had held that "[u]nder OCGA § 40-6-392 (a) and (f) [breath testing machines] the prosecution was required to introduce the certificate of compliance required by OCGA § 40-6-392 (a)"; however, in this case the fact the machine had all its requisite parts was established circumstantially through the testimony of the chemist who performed the test. In *Kampplain*, at 18, we refused to "reach the issue whether in each and every case where the statutory certificate has not been provided, including situations where no certificate is provided but the machine had all the required components attached, the result of the chemical analysis test is automatically excluded from evidence. *Evidence exclusion is an extreme sanction and not one favored as a matter of course in the law.*" (Emphasis supplied.) We reach that issue today and hold that substantial statutory compliance can be established by circumstantial evidence arising from the testimony of a chemist who operated the machine and performed the test.

In this case it is not suggested that the gas chromatograph (blood) machine had any part missing. It is not suggested that the gas chromatograph is susceptible to being operated with any of its parts removed or "overridden," as has been the case in certain Intoxilyzer (breath) cases. The record shows the GBI/DFS issued rules which approved the gas chromatograph machine for use in blood testing. Cf. *Corner v. State*, 223 Ga. App. 353, 354 (477 SE2d 593). The testimony of the chemist shows he expertly tested and calibrated the machine and concluded that it was working when he tested appellant's blood. He testified that the GBI/DFS had issued written

"approved techniques or methods" as to how to use the gas chromatograph machine; these apparently were in the manual which the expert offered to defense counsel at trial but which defense counsel refused to receive. That this manual was not admitted at trial cannot entirely be laid at the State's feet; appellant cannot contend that the State did not produce it or that he had no access to it, and he could not refuse to look at it and then complain that the State never produced it at trial.

We find no *requirement* in OCGA § 40-6-392 that a "certificate" of any kind must be introduced at trial in order for the test result to be admitted as "valid." The only requirement as to a certificate is that the GBI/DFS shall approve satisfactory techniques or methods to issue certificates. And nothing in the Code section *requires admission* of any certification. Both OCGA § 40-6-392 (e) and (f) merely provide that certifications *"shall be admissible"* to prove the foundational requirements of OCGA § 40-6-392 (a) (1) (A). "Certificates" are not the exclusive means of laying the foundation to admit alcohol test results. If the legislature intends the State to prove more, it must expressly require it, for exclusion is an extreme sanction we will not invoke on uncertain language. See *Kampplain*, supra.

Notwithstanding our above holding, we admonish prosecutors to become thoroughly familiar with the statutory requirements of OCGA § 40-6-392 and strive to follow strictly the procedures therein contained.

3. Appellant asserts that the "methods" and "procedures" required by § 40-6-392 (a) (1) (A) to be enacted by the GBI were unavailable to him, but the record plainly shows this to be untrue.

4. Appellant contends the arresting officer gave inaccurate implied consent advice. The officer read to appellant the implied consent warning from the Department of Public Safety form which contains the most recent codified implied consent warnings verbatim. We will therefore not hold this warning to be insufficient. *Howard v. State*, 219 Ga. App. 228 (465 SE2d 281).

5. The trial court did not err in quashing appellant's subpoenas for production of "scientific reports." The defense must make a prima facie showing that the requested materials are relevant to his defense and that he has a right to the materials. *Anglin v. State*, 173 Ga. App. 648 (327 SE2d 776), and the trial court may properly quash an unreasonable and oppressive subpoena. OCGA § 24-10-22 (b) (1); *Aycock v. Household Finance Corp. &c.*, 142 Ga. App. 207 (235 SE2d 578). Less than one week before trial, appellant sought to subpoena all chain of custody documents and all notes and information generated by the chemist pertaining to standards and controls he used; all manuals, training materials, written techniques, methods, procedure or protocols referred to by him; and all records pertaining to other

persons tested for DUI ten days before and after appellant's arrest. We agree that in this case, the subpoena was overbroad and unreasonably oppressive. *Hill v. Willis,* 224 Ga. 263 (161 SE2d 281). Appellant did not have a right to the notes and work products of the State's experts (*Williams v. State,* 251 Ga. 749, 752 (312 SE2d 40)), nor was he entitled to a copy of the graph used to produce the final crime lab report. *Cothran v. State,* 177 Ga. App. 58, 60 (338 SE2d 513).

6. We have examined the evidence in this case and find it sufficient to persuade a rational trier of fact of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Beasley and Blackburn, JJ., concur.*

DECIDED MARCH 4, 1997 —
RECONSIDERATION DENIED MARCH 27, 1997 — 

*Monte K. Davis,* for appellant.
*Ralph T. Bowden, Jr., Solicitor, Noah H. Pines, W. Cliff Howard, Assistant Solicitors,* for appellee.