A97A1542. GASTON v. THE STATE.
(490 SE2d 198)

ELDRIDGE, Judge.

Patricia Ruth Gaston appeals a State Court of Fulton County jury's verdict finding her guilty of the offenses of improper lane change, expired license tag, and DUI — excessive blood alcohol concentration pursuant to OCGA § 40-6-391 (a) (5). Appellant's enumerations of error hinge upon her contention that the trial court erred in

denying her motion in limine to exclude the results of her chemical test to determine blood alcohol content.

Appellant filed a pretrial motion in limine seeking a determination regarding the admissibility of her breath test results. A hearing was held prior to trial wherein appellant called State Trooper J. M. Webb, the Georgia State Patrol area supervisor who had inspected the Intoxilyzer 5000 upon which appellant was tested. Trooper Webb testified as to his Georgia Bureau of Investigation ("GBI") Division of Forensic Sciences ("DFS") training and license to inspect and certify the operations of the Intoxilyzer 5000. The Certificates of Inspection for the machine, which are issued quarterly, were produced, and appellant did not question Webb thereon or contest the validity thereof. Trooper Webb testified in detail as to his quarterly inspections of the machine on dates both prior to and after appellant's June 9, 1995 breath test; Webb testified that the inspections followed all procedures set forth by the DFS. Webb also testified that, following such inspections, the Intoxilyzer 5000 was working properly pursuant to statutory requirements.

Appellant's counter to such testimony was, essentially, to go through a run down of the Intoxilyzer 5000's myriad parts and ask the officer if he had taken the machine apart during the quarterly inspections and tested each and every component. Trooper Webb repeatedly responded that the machine worked properly pursuant to the diagnostic testing procedures promulgated by the DFS, and therefore, there was no reason to take the machine apart and test each and every component. Appellant then argued that the State failed to prove that the machine was operating with "all its electronic and operating components . . . attached . . . in good working order" pursuant to OCGA § 40-6-392 (a) (1) (A).

The trial court determined that the testimony of Trooper Webb was sufficient to satisfy the foundational statutory requirements for the admission of the appellant's breath test results pursuant to OCGA § 40-6-392 (a) (1) (A). *Held*:

1. In her first enumeration of error, appellant contends that the State failed to prove that the Intoxilyzer 5000 was operating with all its components attached and in good working order pursuant to OCGA § 40-6-392 (a) (1) (A), because the State's witness, Trooper Webb, did not actually test each component individually to determine if it was in good working order during his quarterly inspections and testing. This contention is meritless.

The results of a breath test are not admissible, over proper objection, unless a foundation is laid by the State. *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543) (1982). As appellant correctly notes, the State may lay the required foundation for the admission of chemical test results in "one of two ways": through either the testimony of a

"live witness" or "with an easier method for proving this requirement than with a live witness," i.e., the introduction of "self-authenticating Certificates of Inspection." As has been recognized by this Court, the certification requirement of OCGA § 40-6-392 (a) (1) (A) and (f) "is an administrative and evidentiary procedure designed to relieve the State from the time-consuming and costly burden of having to produce live witnesses," and nothing in the statute is meant to preclude the State "from proving a DUI offense by other admissible evidence." *State v. Kampplain*, 223 Ga. App. 16, 19 (477 SE2d 143) (1996); *Hobbs v. State*, 224 Ga. App. 314 (480 SE2d 330) (1997). The "other admissible evidence" that may satisfy the requisites of OCGA § 40-6-392 (a) (1) (A) is the live testimony of an appropriate witness concerning such requirements; the admission of the Certification, itself, is simply an aid to the admission of the chemical test results. See *Bazemore v. State*, 225 Ga. App. 741 (484 SE2d 673) (1997); *Jordan v. State*, 223 Ga. App. 176, 179, n. 2 (477 SE2d 583) (1996); *Carr v. State*, 222 Ga. App. 776, 777-778 (476 SE2d 75) (1996); *Harden v. State*, 210 Ga. App. 673 (436 SE2d 756) (1993); *Broski v. State*, 196 Ga. App. 116, 118-119 (395 SE2d 317) (1990).[1] Further, the admission of such evidence "rests within the sound discretion of the trial court which appellate courts will not disturb absent evidence of its abuse." *Howard v. State*, 206 Ga. App. 610 (426 SE2d 181) (1992); *Whisnant v. State*, 178 Ga. App. 742, 743 (344 SE2d 536) (1986).

In the case sub judice, it is undisputed that DFS issued the Certificate of Inspection for the Intoxilyzer 5000 used to test appellant. In addition, the testimony of Trooper Webb satisfied the foundational requirements of OCGA § 40-6-392 (a) (1) (A) in that his testimony demonstrated that, at the time of appellant's breath test, the Intoxilyzer 5000 had been tested and maintained under the methods and provisions promulgated by the DFS, which methods and provisions showed that the machine was operating with the components prescribed by its manufacturer properly attached and in good working order. *Williams v. State*, 224 Ga. App. 368, 370 (481 SE2d 535) (1997); see also *Lattarulo v. State*, 261 Ga. 124, 127 (401 SE2d 516) (1991).

Contrary to appellant's argument, the plain language of the statute does *not* direct that the Intoxilyzer 5000 machine be taken apart and each component tested individually, when the diagnostic procedures and methods approved by the DFS demonstrate to the licensed inspector that the machine is operating properly. Statutes must be construed in order to square with common sense and sound reasoning, as well as to effectuate the purpose of the General Assembly.

---

[1] See also OCGA § 40-5-67.1 (g) (2) (F) (copy of the operator's permit and original copy of test results, or copy of crime lab report, shall satisfy admissibility requirements under OCGA § 40-6-392 (a) (1) (A)).

*Jordan*, supra at 182. A ridiculous result would obtain should this Court find OCGA § 40-6-392 (a) (1) (A) requires that an Intoxilyzer 5000 machine, which is working properly according to DFS approved diagnostic tests, must be taken apart and all its component parts individually tested in order to prove that the machine is working properly, as was already established by the DFS approved diagnostic tests.[2] The statute, by its plain terms, does not require such a circular process, and the intent of the General Assembly "to provide for the admissibility of breath samples" would be frustrated by such an interpretation. Ga. L. 1995, p. 1160.

OCGA § 40-6-392 (a) (1) (A) specifically permits the DFS to establish and approve the methods and provisions for the testing and maintenance of breath test machines. The evidence showed that such methods and provisions were followed in the case sub judice, and that the Intoxilyzer 5000 was working properly pursuant to statutory requirements; appellant did not demonstrate otherwise. Accordingly, the trial court did not abuse its discretion in finding that the appellant's breath test was admissible under the statute.

2. Next, appellant contends that the foundational requirements of OCGA § 40-6-392 (a) (1) (A) for the admissibility of chemical test results must be proved in front of the jury. We disagree.

A motion in limine is the proper vehicle by which to interpose an objection to the admissibility of chemical test results on the basis urged by appellant herein, non-compliance with the provisions of OCGA § 40-6-392 (a) (1) (A). *Johnston*, supra at 414-415; *Smith v. State*, 185 Ga. App. 531 (364 SE2d 907) (1988). "A motion in limine is a *pretrial* motion which may be used two ways: 1) The movant seeks, not a final ruling on the admissibility of evidence, but only to prevent the mention by anyone, during the trial, of a certain item of evidence or area of inquiry until its admissibility can be determined during the course of the trial *outside* the presence of the jury[; and] 2) The movant seeks a ruling on the admissibility of evidence prior to the trial. The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violative of some ordinary rule of evidence, prior to trial. If, however, the trial court decides to rule on the admissibility of evidence prior to trial, the court's determination of admissibility is similar to a preliminary ruling on evidence at a pretrial conference, and it *controls* the subsequent course of action, unless modified at trial to prevent manifest injustice." (Citations and punctuation omitted; emphasis supplied and in original.) *Johnston*, supra at 415.

---

[2] Would the machine need to be taken apart *again* in order to make sure all components are still properly attached and working after the machine's reassembly, ad infinitum?

In the instant case, appellant sought and received a pretrial ruling regarding the admissibility of her breath test results. At the pretrial hearing, the State laid the required foundation for the admission of appellant's chemical test results. Thereafter, the trial court's ruling controlled this matter of law, and the State was not required to re-prove the legal issue of admissibility to the *jury*. If appellant, subsequently, desired to raise an inference to the jury that her breath test had some margin for error or may have given an erroneous result, appellant was free to call appropriate witnesses to do so. "[N]o procedure is infallible. An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction." *Lattarulo*, supra at 126. However, such evidence would relate to the weight rather than the admissibility of appellant's breath test results. Id. The determination of admissibility, pursuant to the foundational requirements of OCGA § 40-6-392 (a) (1) (A), is never a jury question. See, e.g., *Kitchens v. State*, 256 Ga. 1, 6 (342 SE2d 320) (1986) (Gregory, J., concurring specially). There was no error.

3. As appellant's chemical test results were properly admitted into evidence, we find the evidence was sufficient to support the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED JULY 28, 1997.

*Monte K. Davis*, for appellant.
*Carmen Smith, Solicitor, Allison L. Byrd, Phillip Jackson, Assistant Solicitors*, for appellee.