A97A1522. CALDWELL v. THE STATE.
(495 SE2d 308)

BEASLEY, Judge.

Anna L. Caldwell was convicted of driving under the influence for having in her blood an alcohol concentration of .10 grams or more within three hours after driving on October 23, 1995. OCGA § 40-6-391 (a) (4), redesignated OCGA § 40-6-391 (a) (5) by Ga. L. 1996, p. 1413. The sole enumeration of error relates to the admission in evidence of the chemical test results. Caldwell maintains the prosecution failed to lay the foundation required under OCGA § 40-6-392 (a) (1) (A) to establish that the Intoxilyzer 5000 used to test her breath was operating properly in that the attempted foundation was based on hearsay which violated her constitutional rights to confront witnesses.

No certificate of compliance in this regard, in the form provided by OCGA § 40-6-392 (f) in accordance with subsection (a) (1), was introduced. " 'Certificates' are not the exclusive means of laying the foundation to admit alcohol test results." *Bazemore v. State*, 225 Ga. App. 741, 745 (2) (484 SE2d 673) (1997) (chemist who operated gas chromatograph established integrity of device). Although by law certificates are self-authenticating and satisfy the requirement of proof that the intoximeter operated properly, proof of this fact may thus also be established by other evidence. Id. at 744. Compare *Hobbs v. State*, 224 Ga. App. 314 (2) (480 SE2d 330) (1997); *Cullen v. State*, 223 Ga. App. 356, 357 (2) (477 SE2d 620) (1996); *State v. Kampplain*, 223 Ga. App. 16 (477 SE2d 143) (1996); and *State v. Hunter*, 221 Ga. App. 837 (1) (473 SE2d 192) (1996). Although *Kampplain* left this

issue open, supra at 18, *Bazemore* resolved it.

State Trooper Tackett's job as area supervisor is to conduct periodic inspections of Intoxilyzer 5000s and to issue certificates pursuant to OCGA § 40-6-392 (f). She did not conduct an inspection of or see the particular machine used for Caldwell, but she was permitted to testify based on certain documents printed by the machine during its most recent inspection by State Trooper Webb, who was unavailable to testify.

The recent decision in *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997), held that a certificate issued pursuant to OCGA § 40-6-392 (f) may be admitted upon proper foundation under the business records exception to the hearsay rule without infringing on a defendant's rights under the confrontation clauses of the Federal and State constitutions. OCGA § 40-6-392 (f) specifies that the statutorily-worded certificate which documents that the breath-testing instrument has passed inspection "shall, notwithstanding any other provision of law, be self-authenticating, shall be admissible in any court of law, and shall satisfy the pertinent requirements of paragraph (1) of subsection (a) of this Code section and subparagraph (g) (2) (F) of Code Section 40-5-67.1." See *Brown*, supra; *Kampplain*, supra, 223 Ga. App. at 18-19. That is the starting point of a fact analysis here, as we consider a substitute.

Based on a number of testing printouts produced by the machine during its most recent quarterly inspection, Trooper Tackett gave her opinion that a certificate had been properly issued by Trooper Webb since the machine had all of its parts connected and was in good working order. The printouts are not hearsay but rather the mechanically-generated reports automatically created by the machine. They do not constitute out-of-court statements by any person or "the conclusion of a third party not before the court," as was the impediment in *Miller v. State*, 266 Ga. 850, 854 (3) (472 SE2d 74) (1996). Even if they did constitute hearsay, they fell within the business record exception to the hearsay rule, as does the statutory certificate based on them. *Brown*, supra. Caldwell was not denied any right to cross-examine the machine about the printouts it produced. She did thoroughly cross-examine Trooper Tackett, who interpreted the printouts and described the tests which they reported.

Trooper Tackett described the certification process and testified that the acetone interference detection test on the machine is conducted in the first and third quarter checks each year. The diagnostic test is done each quarter, with the additional mouth alcohol test the second and fourth quarters, and the radio interference test annually. The frequency of all these tests is in accordance with the rules of the Division of Forensic Sciences and the manufacturer's suggestion. Records are maintained of the inspections and resulting certificates

by both the agencies involved and by the inspectors such as Troopers Tackett and Webb.

The inspection conducted by Trooper Webb had been on October 4, during the fourth quarter of the year, so a separate acetone check was not included in the printouts reviewed by Trooper Tackett. She could not testify expressly that an acetone check had been conducted on the machine on another occasion, although her testimony supports the inference that inspection of the Intoxilyzer is an ongoing and cumulative process.

Paragraph (1) (A) of subsection (a) of OCGA § 40-6-392 states that the machine on which the accused's bodily substance was tested must be one "which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order." It further designates the Division of Forensic Sciences of the Georgia Bureau of Investigation as the agency which "shall approve satisfactory techniques or methods . . . to issue permits, along with requirements for properly operating and maintaining any testing instruments, and to issue certificates certifying that instruments have met those requirements. . . ."

Caldwell urges that the intoximeter test results, showing that when tested soon after driving she registered .139 and .121, were inadmissible because the trooper who testified about the testing of the machine did not know whether the acetone check had ever been conducted on the machine. Caldwell would change the statutory law by requiring more evidence than is required by the legislature to ensure intoximeter test results are valid.

Had there been any acetone interference, the filters would detect that and the printout would show that the "internal standards" part of the machine's diagnostic test "failed." The printout showed that the machine "passed" the internal standards. The twice yearly separate acetone interference detection test is a check on acetone in addition to the diagnostic test's detection of acetone or other interfering substances. Consequently, the witness was able to testify, as she did, that the machine was operating with all of its components attached and in good working order, as required by OCGA § 40-6-392 (a) (1) (A). It was not necessary for her to know or to testify that the secondary acetone test had been satisfactorily conducted the previous quarter.

Thus, there was not a missing element in the foundation needed for admission of the results of the test taken by Caldwell. Were it otherwise, then all four quarterly certificates for a year, ending with the certificate showing machine testing close in time to the accused's test, would be a prerequisite for admission of the accused's test results. This would be so because only all four sequential certificates would show that not only the diagnostic test but also the acetone

test, the mouth alcohol test, and the radio test were conducted in that year.

The law does not require that. It provides that "the certificate . . . shall satisfy the pertinent requirements of paragraph (1) of subsection (a) of this Code section." OCGA § 40-6-392 (f). It refers expressly to the certificate that is prepared and signed "each time" the instrument is inspected. Id. There is no requirement that, in addition, the State prove that the periodic tests not done in connection with the certification at issue were also done at some time. The law leaves the techniques and methods for machine testing up to the Division of Forensic Sciences. The Division does not require a separate acetone interference test, or for that matter a separate mouth alcohol or radio interference test, to be conducted "[e]ach time an approved breath-testing instrument is inspected." OCGA § 40-6-392 (f). Yet a single certificate, standing on its own, is sufficient to assure the machine was operating properly. That being the case, the testimony establishing in detail the same thing the certificate would have summarily shown, in shorthand fashion, is not deficient.

The evidence was properly admitted, the State proved that the machine was operating in accordance with OCGA § 40-6-392 (a) (1) (A) when Caldwell was tested, and it further proved that Caldwell "did have an alcohol concentration of 0.10 grams or more at a time within three hours after driving. . . ." The judgment of conviction is affirmed.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Smith and Ruffin, JJ., concur. McMurray, P. J., and Eldridge, J., dissent.*

MCMURRAY, Presiding Judge, dissenting.

In my view the prosecution failed to lay the foundation required under OCGA § 40-6-392 (a) (1) (A) to establish that the Intoxilyzer 5000 with which defendant Caldwell's breath was tested was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. Therefore, I respectfully dissent.

No certificate of compliance, in the form provided by OCGA § 40-6-392 (f) and as required by OCGA § 40-6-392 (a), was introduced in this case. However, the absence of the statutory certificate is not dispositive since this Court has held that a failure to provide a statutory certificate for the test machine does not always require exclusion of the test results. *Bazemore v. State*, 225 Ga. App. 741, 743 (2), 744 (484 SE2d 673).

The State attempted to provide the required foundation for admission of the breath test results via the testimony of State Trooper Tackett, whose job it is to conduct periodic inspections of Intoxilyzer 5000s and issue the certificates provided pursuant to

OCGA § 40-6-392 (f). Yet, Trooper Tackett had never conducted an inspection of nor even seen the particular machine upon which defendant was tested. Instead, Trooper Tackett was permitted to testify based on certain documents printed by the machine during its most recent inspection by State Trooper Webb, who was not available to testify.

Trooper Tackett acknowledged that the procedures she had learned from both the machine's manufacturer and the Georgia Bureau of Investigation required that a test of the machine's ability to detect the presence of the interfering substance acetone was to be performed periodically, and apparently Trooper Tackett had been taught that this test was to be performed twice a year or during every other quarterly inspection of the machine. Specifically, the acetone test of the interferant detector was to be conducted on the first and third quarter of the year. The fact that the inspection conducted by Trooper Webb had been in October, during the fourth quarter of the year, explains why the results of an acetone check were not included in the printouts reviewed by Trooper Tackett. Thus, Trooper Tackett had no knowledge as to whether an acetone check had ever been conducted on the machine in question.

Even though the evidence elicited from Trooper Tackett concerning the administratively created inspection scheme is somewhat incomplete, it is apparent that the Intoxilyzer 5000 was not to be deemed to be working properly and appropriate for certification in the absence of proof that the machine had passed the acetone check test during one of the two preceding quarters. In the absence of such evidence, no proper foundation was laid for admission of the results of the test of defendant's breath.

This does not mean that multiple certificates are necessary to create a foundation for the admission of an accused's test results. However, one must infer from Trooper Tackett's testimony that inspection of the intoxilyzers is an ongoing and cumulative process of a nature such that each quarterly inspection viewed in isolation does not provide complete assurance that a machine has all of its parts and is working properly. This is the case because under the mandated procedure some tests are performed during each quarterly inspection while others are conducted less frequently. For example, just as the acetone test is only required during the first and third quarter inspections, the mouth alcohol test is only required on the second and fourth quarters. A radio interference check is conducted annually. Thus, in order to convey an assurance that the machine had all of its parts connected and was in good working order, the certification must be based on more information than is provided solely by the tests conducted during each quarterly inspection.

Records are maintained of the inspections and resulting certifi-

cates by both the agencies involved and by the inspectors such as Troopers Tackett and Webb. If the certification process does not involve some consideration of these records of past inspections then it would be theoretically possible to continue indefinitely obtaining certification of a defective machine, for example a machine which could not pass the mouth alcohol test could still be certified in alternating quarters, that is for one half of each year.

Therefore, I do not suggest that the State prove something beyond the required certification or conduct any additional tests. Instead, I maintain that reasonable inferences should be drawn from the evidence adduced at trial concerning the inspection procedure mandated by the Division of Forensic Sciences of the Georgia Bureau of Investigation, but unfortunately not published by the Secretary of State in the Registry of the Rules & Regulations of the State of Georgia so that we might take judicial notice of this important information rather than relying on the sometimes fragmentary evidence introduced at trial. In order to give a reasonable meaning to the scheme described by Trooper Tackett, I would infer that before a certificate pursuant to OCGA § 40-6-392 (f) may be properly issued, the tests mandated for the current quarter must be successfully completed *and* the records relating to a particular machine must show successful completion of all mandated tests within an appropriate interval of time as well as the correction of any discovered defects in the machine.

An equal degree of proof must be required to establish the foundation for admission into evidence of the intoxilyzer results in the absence of the statutory certificate. To insure the accuracy of intoxilyzer results, the legislature has provided the foundation requirement contained in OCGA § 40-6-392 (a) (1) and charged the Division of Forensic Sciences with formulating appropriate procedures. The Division of Forensic Sciences has clearly rejected any notion of exclusive reliance on an intoxilyzer to inspect itself via various diagnostic programs by mandating tests which involve the introduction of various foreign substances to the machine. The mandated procedure requires that the acetone interferant test be performed semiannually. There is no evidence that the acetone test had ever been performed on the Intoxilyzer 5000 used to test defendant's breath. Under these circumstances, no foundation was laid for admission into evidence of the results of the test of defendant's breath on the Intoxilyzer 5000.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED DECEMBER 5, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997

*Thomas J. Thomas*, for appellant.
*Keith C. Martin, Solicitor, Evelyn Proctor, Assistant Solicitor*, for appellee.