## A98A0060. DEAN v. THE STATE.
(501 SE2d 895)

SMITH, Judge.

William Michael Dean was charged by accusation with DUI. A jury found him guilty, and judgment and sentence were entered on the jury's verdict. Dean appeals following the denial of his motion for new trial. We affirm.

1. Dean contends the trial court erred for several reasons in admitting into evidence the results of a State-administered blood test showing that Dean's blood alcohol concentration was .15 grams.[1]

(a) Dean first argues that the qualifications of the person who drew the blood were not proved as required by OCGA § 40-6-392 (a) (2). We do not agree.

Dean's blood was drawn at Floyd Medical Center, and the phlebotomy coordinator at the hospital testified at trial. She testified that she did not draw Dean's blood but produced hospital business records showing the identity of the person who drew the blood; that person was on medical leave from the hospital at the time of trial. She stated that the person who drew the blood had been under the witness's supervision for two years, was a State-certified phlebotomist, and was still employed by the hospital. She later identified a facsimile copy of a document from the hospital's records indicating that the person who drew Dean's blood had passed the State examination for phlebotomists.[2]

OCGA § 40-6-392 (a) (2) provides that when blood is drawn at the request of a law enforcement officer for the purpose of determining alcohol content, "only a physician, registered nurse, laboratory technician, emergency medical technician, or other qualified person may withdraw blood." When the State seeks to prove a violation of OCGA § 40-6-391 (a) by using a chemical test, it must prove the blood was drawn by a person who was "qualified" within the meaning of the statute. *Harden v. State*, 210 Ga. App. 673, 674 (1) (436 SE2d 756) (1993). But contrary to Dean's assertion, *Harden* did not limit the ways in which such qualifications may be shown. We described in *Harden* "at least two ways" for the State to carry its burden: by calling as a witness the person who drew the blood and having that person testify as to his or her qualifications; or by presenting a certifica-

---

[1] We note that although the accusation charged Dean with violating OCGA § 40-6-391 in two ways, the State was required to prove only that Dean violated it in one way in order to obtain a conviction. Even if the blood test results were inadmissible, their admission would be harmless error, because the record also contains sufficient evidence to support the jury's finding that Dean was guilty of driving under the influence of alcohol such that he was a less safe driver. We nevertheless address the merits of Dean's enumerations.

[2] Although Dean now appears to challenge the use of a fax transmission of a photocopy of this record, it is clear from the transcript that he did not object on this basis at trial.

tion from the Secretary of State or the Department of Human Resources showing that the person who drew blood was licensed or certified in a profession listed in OCGA § 40-6-392 (a) (2). Id.

It is clear from the choice of words in *Harden*, as well as from case law, however, that these two methods are by no means the exclusive ways of satisfying the State's evidentiary burden. "The words 'at least' imply that other ways exist, and the case law makes clear that the State's burden may be carried in other ways." *Brahm v. State*, 230 Ga. App. 407, 408 (1) (497 SE2d 240) (1998). A full-time hospital employee trained to draw blood whose only job is to do so is a qualified person under the statute. *Gooch v. State*, 155 Ga. App. 708, 711 (6) (272 SE2d 572) (1980). In this case, the State established, through hospital business records and the testimony of a supervisor, that the person who drew Dean's blood was an employee of the hospital, trained as a phlebotomist, who passed the State's qualifying examination for phlebotomists. This was sufficient to carry the State's burden of proving her qualifications pursuant to the statute.

(b) Dean also argues that the test results should not have been admitted because an inadequate chain of custody was shown with regard to the blood sample. The record belies this contention.

The arresting officer, John Burnette of the Floyd County Police Department, testified that he witnessed the blood being drawn. He then secured the test tube in a sealed plastic bag, carried it with him while he booked Dean at the jail, and deposited it in the locked evidence refrigerator at the police department. The police evidence custodian testified he removed the sample from the refrigerator and took it to the state crime laboratory in Decatur, where he placed it in the locked drop box provided for this purpose. The supervisor of the implied consent section at the Atlanta Crime Lab, a forensic chemist in charge of alcohol testing for the State, testified that the evidence technician at the lab cut open the outer plastic bag, and the sealed test tube was identified and stored in the laboratory refrigerator until ready for analysis. The forensic chemist testified that the tube was still properly sealed when he opened it to perform the analysis. He testified that this sample was handled routinely in the laboratory's usual manner.

This was sufficient to show the chain of custody. When the State wishes to introduce fungible evidence, it must show a chain of custody adequate to preserve its identity to demonstrate with reasonable certainty that the evidence introduced is the same as that seized and that no substitution or tampering has taken place. *Slade v. State*, 222 Ga. App. 407, 408 (1) (474 SE2d 204) (1996). But the State need not exclude all possibility of tampering or show that the substance was guarded closely at every moment. If no showing of tampering is made and only a bare speculation of possible tampering

exists, the chain of custody is not broken and the evidence is admissible, with any doubts going to its weight. *Buffington v. State*, 190 Ga. App. 365, 366 (3) (378 SE2d 884) (1989), overruled on other grounds, *Green v. State*, 260 Ga. 625, 626 (1) (398 SE2d 360) (1990). Accord *Slade*, supra. Here, as in *Buffington* and *Slade*, no showing was made of tampering or substitution. At most, only a bare speculation of tampering existed and the evidence therefore was properly admitted.

2. Dean maintains the trial court committed reversible error in its jury charge regarding entry of a verdict by instructing the jury to return a special verdict in violation of OCGA § 17-9-2, which provides that the jury "shall give a general verdict of 'guilty' or 'not guilty.'" We do not agree.

The accusation charged Dean in the conjunctive with being a less safe driver and with having a blood alcohol content over 0.10. This was proper. It is well established that when a defendant is charged with violating a penal statute containing several ways in which a crime may be committed, in order to withstand a special demurrer the accusation or indictment must charge the different ways conjunctively if it charges more than one of them. *Jones v. State*, 75 Ga. App. 610, 614-615 (4) (44 SE2d 174) (1947). See also *Lubiano v. State*, 192 Ga. App. 272, 274 (1) (384 SE2d 410) (1989).

Because the accusation was drawn in the conjunctive, it was necessary for the trial court to explain the conjunctive form of the accusation to the jury and to ensure that the jury members understood they could find Dean either "guilty" or "not guilty" as to each of the alternatives. This was accomplished by providing the jury with a verdict form that listed separately each of the two methods by which Dean was accused of violating OCGA § 40-6-391 and instructing the jury to indicate "guilty" or "not guilty" as to each method.

We find neither a violation of OCGA § 17-9-2 nor an error in the trial court's instruction or the verdict form. Moreover, even if this verdict form was error, Dean did not object to it at trial and he cannot now complain. *Wilkes v. State*, 210 Ga. App. 898, 899 (2) (437 SE2d 837) (1993).

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MAY 1, 1998.

*John F. McClellan, Jr.*, for appellant.

*Tambra P. Colston, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.