A04A1604. OVERTON v. THE STATE.
(606 SE2d 306)

BARNES, Judge.

Terry Overton appeals his convictions, after a jury trial, for driving under the influence of alcohol to the extent he was a less safe driver (OCGA § 40-6-391 (a) (1)) and driving under the influence in that he drove while his alcohol concentration was 0.08 grams or more (OCGA § 40-6-391 (a) (5)). He contends the trial court erred by denying his motion to exclude evidence derived from a roadblock because the prosecution failed to prove that the roadblock was well identified, that all cars were stopped, and that the delay to motorists was minimal. Overton also contends the trial court erred by denying his motion for a directed verdict and by allowing the prosecution to reopen its case to present additional evidence, and that his convictions should be reversed because the evidence was insufficient. We disagree and affirm.

The principles applicable to appellate review of a criminal conviction are stated in *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). Viewed in the light most favorable to the verdict, the evidence shows that Overton was stopped at a roadblock operated by Georgia State Highway Patrol Troopers. The trooper authorizing the roadblock testified that he was the commander of the local

Highway Patrol Post, in charge of 16 troopers, and that he was responsible for the administrative operations of the post. His duties included determining whether roadblocks were needed. He authorized this roadblock to be conducted on May 17, 2003, from 6:00 to 8:00 p.m. at a designated location, that he selected the site because a number of violations had occurred in the area, and because it had good visibility, traffic could see the roadblock without being surprised, and the location had wide shoulders for the officers to step off the road and conduct their business.

He authorized the roadblock to look for DUI drivers, seat belt violations, defective equipment, and traffic law violations. His purpose was to assure that drivers had their licenses, had insurance, and were not impaired. The written instructions he used to authorize the roadblock were admitted in evidence. He instructed the troopers to check every vehicle that came through and to "[j]ust interview, make sure everything is in order, just to verify information, let them go, and check the next vehicle so we're not backing up." Motorists were not to be delayed unless a trooper detected a violation. If all of the troopers became busy with drivers, the roadblock was to stop until the troopers handled their business and then they were to resume the roadblock. All troopers are trained to detect drivers who are under the influence. He did not know, however, whether troopers at the roadblock followed his instructions about stopping every car. The Georgia State Highway Patrol does not put out signs saying road check ahead or anything like that.

The trooper who encountered Overton at the roadblock testified that he had been a State Trooper for almost seven years, and that he had attended the thirty-three-week basic mandated Georgia State Patrol Trooper School, which included a week-long class on the basic detection and characteristics of one under the influence of alcohol or drugs. During that class, he received instruction on standardized field sobriety testing, including hands-on training with intoxicated people. The trooper also took a two-day course on how to operate the Intoxilyzer 5000, and has been certified by the Georgia Bureau of Investigation (GBI) to operate the Intoxilyzer 5000.

He was with two other troopers conducting the roadblock; they were all doing the same thing. When the drivers pulled up, they would check the license, check insurance, tags, brake lights, and send them on their way, unless something was detected. He was wearing his State Trooper uniform and his blue and gray State Trooper patrol car with the bar light on top was parked on the shoulder. It was still daylight at the time of the roadblock.

Overton drove up to the roadblock and stopped. When the trooper asked him for his driver's license and insurance card, Overton complied. The trooper noticed a strong odor of alcoholic beverage

coming from the interior of Overton's car. He noticed that Overton had a red, flushed face; his eyes were glassy, watery, and bloodshot.

Because the trooper noticed the smell of the alcoholic beverage, he asked Overton to pull over to the shoulder of the roadway, and had Overton step out of the car. The trooper interviewed Overton while he was out of the car. The trooper did not notice any slurred speech, but did notice a very strong odor of alcoholic beverage coming from Overton. While standing about an arm's length from Overton, the trooper talked with him about his consumption of alcoholic beverages and Overton told the trooper that he had drunk one beer about 35 minutes before he was stopped.

After a wait of about five minutes, the trooper then gave Overton a roadside alco-sensor test, which was positive for the presence of alcohol. The trooper, however, did not ask Overton to perform any of the standardized field sobriety tests, e.g., the horizontal gaze nystagmus, the nine-step walk and turn, or one-leg lift because of the terrain where they were standing. Nevertheless, after receiving the positive reading from the alco-sensor, the trooper asked Overton again how many alcoholic beverages he had consumed all day, and Overton said that he had three beers all day long. At this point the trooper arrested Overton for driving under the influence of alcohol, handcuffed him, put him in the back seat of the patrol car, and read him the implied consent rights warning for suspects aged 21 or older from the Georgia Implied Consent Notice card that the trooper carried with him. After that, Overton agreed to take the breath test, and the results of his tests showed readings of 0.111 and 0.113 blood alcohol content. After the test was completed, the trooper cited Overton for driving under the influence. Although the trooper did not see Overton commit any traffic violation or any acts of less safe driving, in his opinion, based upon the amount of alcohol in Overton's system, Overton was a less safe driver. The trooper reached this opinion even though Overton did not have slurred speech, was polite, and was not unsteady on his feet.

At the conclusion of the State's case, Overton moved for a directed verdict of acquittal relying on *Baker v. State*, 252 Ga. App. 695 (556 SE2d 892) (2001), which establishes the current standards for authorized roadblocks. Overton contended that the State had failed to prove that all vehicles were stopped, that the delay was minimal, and that the roadblock was well identified. After argument by counsel, the trial court, over Overton's objection, permitted the State to reopen its case to ask the trooper who arrested Overton about the delay to motorists by the roadblock. The trooper testified that the delay was "very minimal. Check them and move them on through unless there was something that needed to be checked such as a DUI or a suspended license and stuff like that. On this day every car was

checked and moved along as fast as possible." The trial court denied Overton's motion for a directed verdict.

The defense then called two witnesses. The first was a forensic chemist from the GBI, Division of Forensic Sciences, who testified about various concepts concerning alcohol in the blood and blood alcohol testing. On cross-examination the witness also testified on the effect that various levels of alcohol had on a driver's impairment. In particular, the witness testified that on average a person with a 0.11 level, as Overton did in this case, would have a 50 percent loss of reaction time, and would show "a loss of equilibrium, difficulty in doing fine motor skill tasks" of the kind necessary to drive.

After this testimony, Overton testified in his own defense. He stated that he previously had lung cancer, which is now in remission, was shot in the chest in a hunting accident, and has chronic lung problems. Additionally, he explained that his eyes were red because he had been working in the yard all afternoon. Although he admitted having three beers between 2:00 and 5:00 p.m. that day, he said he had no problems driving and denied that he was impaired.

Nevertheless, the jury returned a guilty verdict on both counts. Following the denial of his motion and amended motion for a new trial, this appeal followed.

1. As Overton did not obtain the permission of the court before filing a supplemental brief, we have not considered the matters stated in his supplemental brief. Court of Appeals Rule 24.

2. Overton first contends that the trial court erred by denying his "motion to suppress and motion in limine to exclude evidence gathered from a road check," including the results of his breath test, because "there was no evidence that the road check was well identified, that all cars were stopped, and the delay to motorists was minimal." This enumeration of error is without merit because Overton made no such motions.

The record on appeal shows that Overton never made a motion in limine on this ground and his motion to suppress asserts only the following: "(h) The evidence was obtained as a result of an illegal warrantless stop, detention and arrest of the defendant without probable cause or a reasonable and articulable suspicion of criminal activity." This subparagraph was part of a pleading entitled "Motion to Suppress and Motion in Limine" that included a broad range of bases for granting a motion to suppress in DUI cases. The motion, however, never mentions the roadblock, and never states any facts "showing that the search and seizure were unlawful" as required by OCGA § 17-5-30 (b). Overton's "motion contains only a series of conclusions unsupported by statements of fact. Accordingly, the

motion did not meet the statutory requirements of OCGA § 17-5-30 (b)." *Boatright v. State*, 192 Ga. App. 112, 118 (8) (385 SE2d 298) (1989).

Further, Overton would not be entitled to appellate relief even if we were to treat his pleading as a motion in limine because the trial court was not required to rule on the motion in limine. See *Gaston v. State*, 227 Ga. App. 666, 669 (2) (490 SE2d 198) (1997). Under our law, counsel must obtain rulings on his motions or objections, and the failure to do so ordinarily results in a waiver. *Harris v. State*, 190 Ga. App. 343, 348 (4) (b) (378 SE2d 912) (1989).

Therefore, as Overton never sought a ruling from the trial court on this motion, we have nothing to review. We cannot find that the trial court erred by denying a motion which was never presented to the court for its consideration in the first instance. Moreover, for the reasons discussed below, the trial court would not have erred by denying Overton's motion even on the grounds he now asserts.

3. The only motion Overton made in the trial court based upon the alleged defects in the roadblock was his motion for a directed verdict. The trial court, however, did not err by denying this motion. A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311) (1984). On appeal a reviewing court may consider all the evidence in the case and must view the evidence in the light most favorable to the verdict. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

In this case, Overton made no objection to the admissibility of his breath test results or any of the trooper's testimony concerning the roadblock or Overton's condition, and made no motion to strike the trooper's testimony or the test results. Therefore, this evidence was properly before the court and was sufficient to warrant the denial of Overton's motion for a directed verdict. "The contemporaneous objection rule has long been a mainstay of Georgia trial practice." *Sharpe v. Dept. of Transp.*, 267 Ga. 267 (1) (476 SE2d 722) (1996). One must object to evidence when it is actually offered, and the failure to object waives any objection which might have been raised. *Glisson v. State*, 165 Ga. App. 342, 343 (5) (301 SE2d 62) (1983). Therefore, the trial court properly considered the evidence, *Hill v. State of Ga.*, 178 Ga. App. 563 (343 SE2d 776) (1986), and did not err by denying Overton's motion for a directed verdict.

In any event, we find that the evidence derived from the roadblock was properly admitted because the evidence showed the State established the criteria for a valid roadblock. Under our law, motorists reasonably may be stopped at a police roadblock when:

(1) the record reflects that the decision to implement the checkpoint in question was made by supervisory officers and not officers in the field and that the supervisors had a legitimate primary purpose. The phrase "decision to implement" includes deciding to have this roadblock, and where and when to have it. The evidence must also show that (2) all vehicles were stopped as opposed to random stops; (3) the delay to motorists was minimal; (4) the roadblock operation was well identified as a police checkpoint; and (5) the screening officer's training and experience were sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

(Footnote and emphasis omitted.) *Baker v. State*, supra, 252 Ga. App. at 702 (1); see also *LaFontaine v. State*, 269 Ga. 251, 252-253 (3) (497 SE2d 367) (1998). While Overton alleges that the roadblock was not properly constituted because the evidence did not show "that the road check was well identified, that all cars were stopped, and the delay to motorists was minimal," these contentions are contrary to the evidence.

The trooper testified that during the roadblock he wore his State Trooper uniform and that the troopers' blue and gray State patrol cars with the bar light on top were parked on the shoulder. He also testified that at the time of the roadblock it was still daylight. This was sufficient. A roadblock in the daytime "requires far less 'identification' by way of lights and reflective gear than a roadblock at night"; no need exists during a daytime roadblock for flashing lights because the troopers were in uniform and their patrol cars were clearly visible. *Boyce v. State*, 240 Ga. App. 388, 390 (523 SE2d 607) (1999), overruled on other grounds, *Baker v. State*, supra, 252 Ga. App. at 702. Further, after the evidence was reopened the trooper testified that the delay was "very minimal. Check them and move them on through . . ." and that "every car was checked and moved along as fast as possible."

We are satisfied that the evidence shows that the roadblock was properly authorized, all vehicles were stopped at the checkpoints, the delay to motorists was minimal, the roadblock was well identified as a police checkpoint, and the screening officers were sufficiently qualified to make initial determinations as to which motorists should be given field sobriety tests. Accordingly, the evidence derived from the roadblock would have been properly admitted even if Overton had imposed a proper objection. *Hardin v. State*, 277 Ga. 242, 244 (3) (587 SE2d 634) (2003).

4. Overton's allegation that the trial court erred by allowing the State to reopen its case after the State had rested and Overton made

his motion for a directed verdict is also without merit. Whether to reopen the evidence rests within the sound discretion of the trial court, and a trial court's ruling in this regard will only be reversed, if in the totality of the circumstances, the record on appeal demonstrates that the court abused its discretion. *Bramblett v. State*, 259 Ga. App. 427, 429 (1) (577 SE2d 100) (2003). Considering the totality of the circumstances in this case, the trial court did not abuse its discretion. *Bryan v. State*, 168 Ga. App. 711 (1) (310 SE2d 533) (1983).

5. Finally, Overton contends his conviction for driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1) should be reversed because no rational trier of fact could have found beyond a reasonable doubt from the evidence presented that he was a less safe driver. As Overton's challenge is based on the sufficiency of the evidence, we employ the test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Humphrey v. State*, supra, 252 Ga. at 527 (1).

We first note that the State was not required to prove that Overton committed an unsafe act to prove that he violated OCGA § 40-6-391 (a) (1). *Apperson v. State*, 225 Ga. App. 804, 805 (2) (484 SE2d 739) (1997). The State need only prove beyond a reasonable doubt that Overton was under the influence of alcohol to the degree that rendered him a less safe driver. See *Peters v. State*, 175 Ga. App. 463, 464 (1) (333 SE2d 436) (1985), overruled on other grounds, *Hogan v. State*, 178 Ga. App. 534, 535 (343 SE2d 770) (1986).

Here, the trooper testified that in his opinion Overton was a less safe driver even though he did not see Overton commit any traffic violations or any unsafe acts and even though Overton was polite, his speech was not slurred, and he was not unsteady on his feet. Because the trooper had the opportunity to observe Overton's condition he was competent to state his opinion that Overton was a less safe driver. *Brent v. State*, 270 Ga. 160, 162-163 (3) (510 SE2d 14) (1998). Additionally, the GBI forensic chemist called by the defense testified on cross-examination that a person with a 0.11 blood alcohol level, as Overton did in this case, would have a 50 percent loss of reaction time, and would show difficulty performing the fine motor skill tasks necessary to drive. From this evidence, the jury could reasonably conclude that Overton was a less safe driver.

Therefore, having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found Overton guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, supra; *Brent v. State*, supra, 270 Ga. at 161.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 1, 2004.

*Virgil L. Brown & Associates, Virgil L. Brown, T. Robert Perkerson, Eric D. Hearn, Larkin M. Lee, Ronald J. Ellington,* for appellant.
*Robert Stokely, Solicitor-General,* for appellee.